ELIZABETH OLSEN, AS ADMINISTRATRIX AD PROSE-
QUENDUM UPON THE ESTATE OF HARRY OLSEN, DE-
CEASED, APPELLANT, v. ERIE RAILROAD COMPANY
AND NEW YORK, SUSQUEHANNA AND WESTERN
RAILROAD COMPANY, RESPONDENTS.

· Submitted December 10, 1923—Decided April 4, 1924.

1. The use necessary to establish a public railroad crossing by pre-
scription must be that of individuals, whose presence thereon is
attributable only to their membership in the general public and
not to their relationship to the owners or users of the property to
which it gives access.
2. The use of such crossing by one individual, even in his capacity
as a member of the general public, is not sufficient to establish
its public nature.
3. In an action for the negligent operation of a railroad because of
failure to give the statutory signals, the circumstance that dece-
dent's mutilated body was found four feet beyond a railroad
crossing does not, in the absence of any other evidence, permit
an inference by the jury that he was injured by an engine or
car while upon such crossing.

On appeal from the Hudson County Circuit Court.

For the appellant, *Kent & Kent.*

For the respondents, *Collins & Corbin.*

The opinion of the court was delivered by

CLARK, J.    This suit is brought under the statute by the
administratrix *ad prosequendum* of Harry Olsen, deceased,
to recover from the defendant corporation the pecuniary loss
sustained by his widow through his death.    At five minutes
past eight o'clock on the evening of March 4th, 1922, Olsen,
a barge captain, left the house of his brother-in-law, 41 River
road, Edgewater, in order to return to his barge.    This barge
was anchored in the Hudson river at the docks of the Penn-
sylvania Coal Company, his employer, at Shadyside, north of

Edgewater. Between the River road and these docks ran the tracks of the defendant railroad company. There were three well-defined paths leading from the River road across these tracks and down to the docks. The most southerly of these paths was known as the Edison crossing, and was a twenty-minute walk from decedent's brother-in-law's house.

At ten minutes past eight one Kazinci, who was at the time playing cards in his house, thirty-five feet from the Edison crossing, was aroused by the sound of moaning. Upon investigation he found plaintiff's intestate lying upon the defendant's tracks, four or five feet north of the planks of this Edison crossing, with a hand and foot severed, injuries from which he died in the hospital that same night.

No one saw the accident and no one knows under what conditions Olsen met his death. Kazinci testified that he heard a train pass the Edison crossing "shortly before" he heard the moaning, and that he did not hear it give any warning. He also said he did not hear any bell "prior to that." He admitted on cross-examination that he was not paying any particular attention to the railroad, and that he did not know how many cars and engines passed before his attention was attracted by the unusual sound of moaning.

This so-called Edison crossing had been built by that company twenty-five years ago, at the time when the construction of the railroad brought its tracks over a road which led from the River road into its storage plant and thence to the docks. So far as the record discloses, it had been used during all that time only by the employes of, and those having business with, the Edison Company, by the boat captains and others having business with the companies owning or using the docks and by the witness Diman, captain of police of the borough of Edgewater.

In this state of facts, Judge Cutler, sitting in the Hudson County Circuit Court, nonsuited the plaintiff, and it is from that judgment she appeals to this court.

The nature of decedent's injuries make it probable that they were caused by contact with the steel wheels of one of defendant's cars or engines. The only testimony adduced

by the plaintiff in support of her averment, that this was the proximate result of the negligent operation of defendant railroad, was the proof of a failure to give the signals required by section 35 of the Railroad act (*Pamph. L.* 1903, *p.* 663) upon the approach of an engine to a public highway. In our opinion, a jury could not properly have found that any duty to give such signals rested upon defendant company. In order to do so, they must have found, both that the Edison crossing was a public crossing, and, further, that decedent was upon it at the time he was injured.

There is no evidence that the Edison crossing is a public highway. The evidence is to the contrary. A public highway can be established by prescription (*Riverside* v. *Pennsylvania Railroad Co.,* 74 *N. J. L.* 476, 479), even across the right of way of a railroad company. *Drelich* v. *Erie Railroad Co.,* 91 *Id.* 600, 602. One of the essential attributes of a prescriptive right is the use by the public of the neighborhood. *Riverside* v. *Pennsylvania Railroad Co., supra.* In our view, such a public use is not made out by proof of the use of a crossing, either by the employes of or those having business with the concerns to whose plants or docks it gives access (*Staub* v. *Public Service Railway Co.,* 97 *Id.* 297), or by one individual. *Wood* v. *Hurd,* 34 *Id.* 87.

In the instant case, the testimony showed that, with the exception of one police captain, the only persons using the Edison crossing were its employes, or invitees and boat captains, employed on barges using the docks. Their use of the crossing, in such circumstances, was not indiscriminate and in their capacity as members of the general public, but because of their relationship to particular property owners or users.

Furthermore, it is our opinion that the trial judge was justified in not leaving to the jury the question of Olsen's position at the precise moment when he was injured. When he was found he was not lying on the crossing, but four or five feet north of it. We have seen there were no eyewitnesses, and therefore no direct evidence as to how the accident occurred. Plaintiff insists, however, that the jury

should have been permitted to infer, from the single circumstance of his nearness to a railroad crossing after the accident, that he was struck while on the crossing and carried beyond it by the impact. There was no testimony that Olsen more frequently went to his barge by way of the Edison crossing than by the other two possible paths to the docks. There was also no testimony that he was struck by any particular train. That being so, we think that an inference equally consistent with the circumstance of the position of his body when found, is, that he was struck after he had passed the crossing and was walking north along the tracks towards one of the other paths to the docks, by an engine or car coming in a southerly direction towards him. Moreover, the fact that Olsen had reached the crossing five minutes after leaving a place within twenty minutes' walking distance therefrom, seems more consistent with his having ridden there on an engine, and therefore with his having been injured in some other way than as a result of his use of the crossing. To permit an inference of negligence by the jury, the circumstances must be more consistent with the existence thereof, than with its absence. *Alvino* v. *Public Service Railway Co.*, 97 *N. J. L.* 526. An essential element of negligence in the case at bar, is the use by plaintiff's intestate of the Edison crossing of the defendant railroad company at the time of his injury. Since the inferences from the proof are equally consistent with Olsen's not having been on the crossing at the time of the injury, we think, for this reason also, the plaintiff must fail.

Let the judgment under review be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, CLARK, JJ.   10.

*For reversal*—None.