TOWNSHIP OF PARSIPPANY-TROY HILLS, IN THE COUNTY OF MORRIS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. VICTOR BOWMAN, DEFENDANT-RESPONDENT.

Argued September 26, 1949—Decided November 7, 1949.

On appeal from former Supreme Court, Morris County.

*Mr. John H. Grossman* argued the cause for the appellant.

*Mr. Ernest F. Keer, Jr.,* argued the cause for the respondent (*Messrs. Boyd, Dodd, Keer & Booth,* attorneys).

The opinion of the court was delivered by

Burling, J.   This is an appeal by the plaintiff municipality from a judgment of the former Supreme Court, Morris County Circuit, upon a verdict of a jury of no cause of action. The appeal was pending in the former Court of Errors and Appeals on September 15, 1948. *Constitution* 1947, *Art. XI, sec. IV, par.* 8 (a).   The appeal seeks a review of the refusal by the trial judge to direct a verdict for the plaintiff and the overruling of objections to evidence introduced by the defendant.

Plaintiff, engaged in road building within the confines of its municipality, undertook the widening of a public highway in its Township, known as North Beverwyck Road, to the extent of 66 feet, it being its contention that the said North Beverwyck Road was an ancient road and that applying the doctrine enunciated in the case of *Ward v. Folly,* 5 *N. J. L.* 566 [*482] (*Sup. Ct.* 1819), hereinafter discussed, it is presumed to be 66 feet in width.   North Beverwyck Road is presently used to a width of 50 feet.

While plaintiff was in the process of widening the said Road, one Troy Hills, Inc., a New Jersey corporation, which was the promoter of the real property development known as Lake Hiawatha, and Victor Bowman, the defendant in this action and the owner of lands and premises abutting on said road, instituted an injunction proceeding in the former Court of Chancery to restrain the plaintiff from proceeding with the widening of said North Beverwyck Road beyond a 50 feet width.

The matter was preliminarily heard in the former Court of Chancery on an order to show cause obtained by the said Troy Hills, Inc., and Victor Bowman, the defendant in this action, before former Vice-Chancellor Fielder.   The former Vice-Chancellor decided that since the matter involved a question of title to lands, the decision as to the title rested with a court of law and could not be determined by the Court

of Chancery, and directed that the suit be instituted at law by the plaintiff in this action to establish the right of the plaintiff to take from the defendant in this action the lands it desires to use; and further issued a temporary injunction, and held the Bill of Complaint in question pending the determination of the issue at law; wherefore the institution of this proceeding in ejectment.

The immediate questions raised by the appeal are: (1) whether the trial court erred in not directing a verdict for the plaintiff upon the premise that uncontradicted proof of the existence of a highway in 1760, created a conclusive presumption that such highway was an ancient public road required by acts of the assembly, prior to 1760, to be 4 rods, or 66 feet in width, (2) whether certain maps and testimony of the municipality's tax assessor, introduced into evidence by the defendant, should have been excluded.

The plaintiff predicated its case upon the doctrine of *Ward v. Folly, supra,* in which case the court reviewed the history of the pertinent legislation which authorized the building of roads. The first act was adopted in 1682, soon after the first settlement of the province. It directed that all necessary highways should be set and laid out in and through every county within this province by certain persons therein named; and that they should "make account thereof and give and return the same to the governor and council, that they may be entered and registered in the public records of the said province." The next act was passed in 1716. It confirmed all roads of 6 and 4 rods wide theretofore laid out "by virtue of a certain act of assembly therein mentioned and thereby repealed." This act confirmed the roads theretofore laid out, and directed the choosing of overseers and that "the public highways to be laid out by the said surveyors shall be four rods wide." It also provided for the laying out by surveyors of plantation roads of 1 and 2 rods wide. But there was no provision for a public record of the proceeding. Thus, between 1716 and 1760 no provision existed requiring a road return to be made a public record. The next act was passed in 1760. It confirmed all roads and highways of 6 and 4

rods wide which had "theretofore been laid by any acts of assembly whatsoever" and after directing the manner of choosing surveyors, and of obtaining a public road, and "that the road so to be laid out shall be two, three or four rods wide, as the case may require," it especially directed that the said surveyors should make return thereof to the clerk of the county who should record the same in the record book.

In 1774, an act was passed confirming all roads and highways of 6 and 4 rods wide "theretofore laid out by any act or acts of assembly whatsoever."

The court concluded in the *Ward v. Folly case,* that an ancient road, proved to be in existence prior to the 1760 act, was to be presumed to be a public road, 4 rods wide, and laid out pursuant to a previous act of the Colonial Legislature.

The plaintiff offered the following evidence to prove the existence of North Beverwyck Road as an ancient public road established prior to 1760:

(a) An unrecorded deed, dated May 8, 1760, from Gershom Mott to Benjamin Howell, conveying premises therein described. Testimony was offered by a great-great grandson of the elder Howell, who had possession of the deed, to the effect that the premises described in said deed had been in the continuous possession of the Howell family since the date of the aforesaid deed, that he presently lives in the property at such location, and that the property described in said deed presently abuts on South Beverwyck Road. The deed, in the metes and bounds description, refers to one of the boundaries of the premises conveyed as a "highway" and as a "road."

(b) A deed, dated August 26, 1761, from Ebenezer Farrand and wife to Patrick Darcey, conveying premises which included the property now owned by the defendant. This latter deed described one of the boundaries of the property so conveyed as the "East side of the Highway leading from Hanover to Pacquanack."

(c) A road return, dated August 12, 1765, which refers to what is now known as Beverwyck Road as the road leading from Hanover to Pacquanack.

(d) A title expert, who testified that his examination of the above deeds and road return as well as other deeds and road returns which referred to various road locations with respect to cross roads and identifiable land owners in the area, indicated that the present location of Beverwyck Road coincided with the location of and was definitely a part of the highway from Hanover to Pacquanack. He further testified that his search disclosed no recorded return for the road in question.

(e) Maps made by Robert Erskine, the surveyor-general for General Washington, between 1778 and 1780, indicating the existence of the road in question some time after 1776.

(f) Plaintiff also introduced into evidence the Acts of the Colonial Legislature, referred to above.

(g) Henry J. Ahlers, the township engineer, testified that in 1937 he made a road survey of North Beverwyck Road, as an incident to the paving thereof; and that he had contacted the old line surveyors in the area from whom he was unable to locate any records of the date or manner of establishment of North Beverwyck Road.

The evidence was such that an inference might have been drawn therefrom to the effect that North Beverwyck Road was a public highway which had been established prior to 1760. The deed, dated August 26, 1761, furnished a probability that the highway leading from Hanover to Pacquanack, referred to therein, is identified as the road presently known as Beverwyck Road. The road return of August 12, 1765, and the testimony of the title expert were also persuasive of the fact that the present location of Beverwyck Road coincides with the location of and was a part of the highway from Hanover to Pacquanack which was clearly established to be in existence as early as 1761. The earlier deed, dated May 8, 1760, referred to a "highway" and "road" which might have been the same highway from Hanover to Pacquanack.

An inference, from the plaintiff's evidence, that Beverwyck Road was in existence prior to the passage of the 1760 Act of the Colonial Legislature, while entirely permis-

sible, is not conclusive. The evidence did not have sufficient clarity to warrant the trial court to foreclose the jury from passing upon and determining the factual question. The words "highway" and "road" in the deed dated May 8, 1760, prior to the effective date of the Act of 1760, may or may not have referred to a public road. The term "highway" is a generic term of various types of roadways. Refer to 25 *Am. Juris., Highways, par.* 5, *p.* 340, and 39 *C. J. S., Highways, par.* 1, *p.* 909. Plantation roads of 1 or 2 rods wide were permissible under section 6 of the Road Act of 1716. The winding contour of Beverwyck Road makes it entirely conceivable that the present road originally consisted, in part at least, of such smaller roads. A careful review of the entire evidence with reference to the establishment of North Beverwyck Road prior to 1760 indicates that a factual question was presented from which different inferences might be drawn. Unless there are no disputed facts or disputed inferences to be drawn from undisputed facts the case should be submitted to a jury. *Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transportation Co.,* 1 *N. J.* 239 (1949). If the inference reasonably drawn will support a finding other than that requested in the motion, the court is justified in refusing the direction. *Trinkle v. Penna. R. R. Co.,* 116 *N. J. L.* 433 (*E. & A.* 1936).

The remaining question relates to the propriety of the court in permitting the introduction into evidence, over objections by the plaintiff, of the following: (a) 4 maps dated 1931, 1932, 1935 and 1937, of Troy Hills, Inc., a development company, (b) 2 maps of the New Jersey State Highway Commission, made in 1937, (c) an assessment map made by the plaintiff municipality in 1930 or 1931, all of which maps show the road in question as having a width of only 50 feet, and (d) the testimony of the tax assessor to the effect that assessments, made by him on properties abutting said road, were based upon the aforesaid assessment map.

It is settled law that a public highway may be established by the following methods:

1—By a laying out according to the statute;

2—By the uninterrupted use and enjoyment by the public of the road as a highway for not less than 20 years without any circumstances to negative the intention to dedicate; and

3—By the actual dedication by the owner to the public as a highway.

*Smith v. State,* 23 *N. J. L.* 712 (*E. & A.* 1852), and see 39 *C. J. S., Highways, p.* 920 *et seq.*

The defendant maintained that the plaintiff had not shown that North Beverwyck Road had been in existence as a public highway prior to 1760. He also advanced the theory that the road might have been created by user by the municipality to the width of 50 feet or by dedication by adjacent property owners to the same width and it became proper for the court to permit defendant's exploration in an effort to determine whether the road in question had become established in some manner other than under legislative authority. Competent, material evidence, having some probative value, would be admissible for such purpose.

The evidence fell short of the purposes intended and accordingly became immaterial. It is urged, however, that the testimony was not only immaterial but incompetent. The testimony was competent as it was received by the court solely upon the subject of user and was not introduced as evidence of an estoppel or prescription against the municipality of the width between 50 and 66 feet. The court submitted the case to the jury solely upon the theory of *Ward v. Folly, supra,* and in its charge to the jury, iterated and re-iterated that the only question for the determination by the jury was whether the road in question was in existence as a highway prior to the year 1760, and charged, as a matter of law, that if the road did exist as a highway prior to the year 1760, it is 4 rods or 66 feet wide, and the verdict should be for the plaintiff. At the close of the case no motion was made by the plaintiff to strike the evidence in view of the failure of the evidence to meet its proffered purpose. At the termination of the charge, the attorney for the plaintiff municipality assured the court that he had no complaint relating thereto.

██ Assuming any impropriety in the admission into evidence of the several maps and the testimony of the tax assessor, in view of the single hypothesis upon which the case was submitted to the jury, it was not prejudicial to the plaintiff. *Rule* 1:2–20(b).

The judgment below is affirmed.

HEHER, J. (concurring). I concur in the judgment of affirmance, but on the ground that, for want of evidence to sustain the pleaded cause of action, there was no issue of fact for submission to the jury, and defendant's motions for a nonsuit and a directed verdict were well founded in law.

The contention of the appellant municipality is that there is "uncontradicted proof" of the existence of Beverwyck Road, "under its ancient name, in 1760," and thus there is a conclusive presumption that the highway was "an ancient public road required by acts of Assembly, prior to 1760, to be four rods, or sixty-six feet, in width." More specifically, it is said that "the existence of the presently-named Beverwyck Road in 1760 as the highway from Hanover to Paquanack" having been established "by recitals in ancient deeds and road returns, and otherwise, it can fairly be presumed, in the absence of further evidence, that the highway came into legal existence by laying-out under act of Assembly, sometime between 1716 and 1760;" and that since the Act of 1716 directed that all roads laid out by the surveyors be four rods wide, "there is no presumption that, in laying out the road in question, the surveyors ignored or failed to observe the legislative mandate as to the width of the road." The facts thus offered to sustain the stated presumption are not in evidence.

As remarked in the opinion of my brethren of the majority, the unrecorded deed of May 8, 1760, bounds the lands on a "highway" or "road;" and the deed of August 26, 1761, describes one of the boundaries as the "east side of the highway leading from Hanover to Paquanack." But this does not mean that the present Beverwyck Road was in existence prior to the passage of the Act of 1760 by the Colonial Legis-

lature, much less that it was laid out by surveyors "under act of Assembly, sometime between 1716 and 1760." A finding to that effect would be without substantial support in the proofs; the claimed inference would be the emanation of surmise and conjecture alone. It is conceded in the majority opinion that the terms "highway" and "road" in the conveyance of May 8, 1761, "may or may not have referred to a public road." What would be the basis for the jury's finding that the reference was to a public road, let alone the present Beverwyck Road? The Act of 1716 also provided for the laying-out by surveyors of plantation roads one and two rods wide. The title of the abutting landowner and the right of public user are placed upon a precarious footing when the issue of the location and width of a highway is submitted to the determination of a jury in circumstances such as these. The burden of proof lay upon the municipality; and there was no issue for the jury unless there was substantial evidence to sustain the tendered hypothesis.

The rationale of the decision in *Ward v. Folly*, 5 *N. J. L.* 566 [*482] (*Sup. Ct.*), determined in 1819, is that the road there in question was then "an ancient road, and used as such as far back as the memory of man can reach," and so "must be considered as a public four-rod road, laid out by virtue of some one of these former acts, before the recording in the county-book was directed, and confirmed by those that succeeded it." Therein lies the factual weakness of the case made by the appellant here. There is an utter want of proof that Beverwyck Road was an "ancient" road, as thus defined, prior to 1760; and a finding that it was such a road would be palpably theoretical without a vestige of evidence to sustain it. There is no proof as to when, or by whom, or under what authority the present road was established; and nothing to support the hypothesis that it was an established public highway at the time of the making of the unrecorded deed of 1760.

A highway may be established by prescription, user or recognition, or by dedication by the landowner with the consent of the appropriate governmental authority, or by statute or direct public action to that end. Generally, the width of

a road established by dedication is determined by the intention; while the width of a highway established by user is governed by the extent of the user. And continuity of user throughout the prescriptive period is a condition prerequisite to the ripening of the right. These are fundamental principles. *Prudden v. Lindsley,* 29 *N. J. Eq.* 615 (*E. & A.* 1878); *Riverside v. Pennsylvania R. R. Co.,* 74 *N. J. L.* 476 (*E. & A.* 1907).

The legal effect of submitting a cause to a jury for its verdict is a determination by the court that the evidence is legally sufficient to warrant a finding by the jury in favor of either of the parties to the cause. To entitle the plaintiff to recover, he must adduce evidence which, if accepted as true, is legally sufficient to sustain a verdict, and warrant a judgment in his behalf. The question of the legal sufficiency of the evidence, if accredited by the jury, is the exclusive province of the court. This has been the recognized rule from time immemorial in the common-law courts of this country and in England. The power of the trial judge to nonsuit or direct a verdict does not depend upon the absence of all testimony *contra;* the inquiry is whether there is any evidence which, if credited, would justify the affirmation, by "men of ordinary reason and fairness," of the proposition sought to be maintained. The question is whether there is a reasonable basis in the proofs for a verdict in favor of the party against whom the direction is asked? The scintilla rule does not obtain in this State. *Schmid v. Haines,* 115 *N. J. L.* 271 (*E. & A.* 1935); *Pellington v. Erie R. Co.,* 115 *N. J. L.* 589 (*E. & A.* 1935); *Trinkle v. Pennsylvania R. R. Co.,* 116 *N. J. L.* 433 (*E. & A.* 1936); *Weigel v. Weigel,* 117 *N. J. L.* 177 (*E. & A.* 1936); *Sivak v. New Brunswick,* 122 *N. J. L.* 197 (*E. & A.* 1939); *Thoe v. Chicago, Milwaukee & St. Paul R. Co.,* 181 *Wis.* 456, 195 *N. W.* 407 (1923); *Wigmore on Evidence* (3rd ed.), § 2495 *et seq.*

The plaintiff municipality undertook to sustain the burden of proof by evidence which was not the subject of dispute and not susceptible of divergent inferences touching the matters in issue; and its sufficiency was a matter for the court. Ac-

cepting the uncontradicted evidence as verity, and giving plaintiff the benefit of all reasonable inferences from the facts thus established, the cause of action is not proved. There is no sufficient basis therein for the presumption that the road in question was laid out prior to the act of the Colonial Assembly in 1760, for that measure confirmed all roads and highways of six and four rods "theretofore * * * laid out by any acts of Assembly whatsoever," or that it was an "ancient" public road within the concept of *Ward v. Folly, supra,* and so such a road by reasonable presumption. There is no substantial support in the evidence for a finding in favor of the plaintiff municipality. Arbitrary inferences from proved facts and circumstances are inadmissible; inferences have no probative force unless they are reasonable and substantial. Another jury could in like circumstances draw a contrary inference in resolving the issue of title to other lands abutting on the same highway, even though the undisputed title record is the sole evidential source.

Were I of the view that the proofs raised an issue of fact, I should vote to reverse the judgment, for on this hypothesis there was clear error in the admission of the maps referred to in the majority opinion, all made between 1930 and 1937, showing the width of the road in question to be fifty feet. These maps had no relevancy whatever on the issue of the existence of an ancient road four rods wide in 1760, laid out by the act of the Colonial Assembly, and the subject matter could not but be highly prejudicial to the municipality. The theory upon which the evidence was admitted would override the long-established principle that title by adverse user may not be acquired against the State. Proof of encroachments upon the highway has no place in this inquiry. The evidence was undoubtedly received and considered as bearing upon the width of the road at its inception; and so the error was harmful.

OLIPHANT, J. (dissenting). I am in accord with the majority view except in so far as it holds the admission into evidence, over the objections of plaintiff, of four maps, dated

1931, 1932, 1935 and 1937 of Troy Hills, Inc., a real estate development; two maps of the New Jersey State Highway Commission, made in 1937; an assessment map made by the plaintiff municipality in 1930 and the testimony of the tax assessor of the plaintiff township that assessments made by him on properties abutting the road in controversy were based on the aforementioned assessment map were, while admittedly immaterial, not prejudicial to the plaintiff. In my opinion all this evidence was both immaterial and incompetent, highly prejudicial to the plaintiff, and its admission constituted error.

True, under the case of *Ward v. Folly*, 5 *N. J. L.* 566 [*482] (*Sup. Ct.* 1819), the trial court limited the question to be determined by the jury to whether or not North Beverwyck Road was in existence as a highway prior to 1760 and if it was, *a fortiori*, it would be four rods or sixty-six feet in width, but it is apparent that throughout the trial there was a studied effort on the part of the defendant to show the road, in all the years of its existence, had never been over fifty feet in width no matter how it had been established whether before 1760 or thereafter. This was a circuitous attempt, through improper evidence, to convince the jury the road was not established prior to 1760 by showing the State and municipal authorities had always considered the road as of a fifty foot width.

For any purpose the evidence was incompetent as well as immaterial. It cannot be seriously questioned that such testimony cannot be offered to prove the width of a road as it existed one hundred and seventy years or more prior to the making of the proffered maps and assessments, with no effort made to show the basis of those maps. They were not competent proof of the matter for which they were offered; namely "to offset any presumption, that this road has never extended over fifty feet in width." See *Scaluorchio v. New York, S. & W. R. R. Co.*, 10 *N. J. Misc.* 528, 159 *A.* 704 (*Sup. Ct.* 1932).

The jury could not but have been swayed and influenced in its determination of the issue submitted to it by the introduction of the evidence complained of to the detriment of the

appellant. I am to reverse the judgment and grant a *venire de novo* on this ground alone.

I am authorized by Chief Justice Vanderbilt to state he concurs in the views expressed herein.

*For affirmance*—Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For reversal*—Chief Justice VANDERBILT and Justice OLIPHANT—2.