134 N.J. Super. 481 (1974)
342 A.2d 209
HARRIET ACKEN, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROBERT C. ACKEN, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
JAMES ALLEN CAMPBELL, DEFENDANT, AND THE READING COMPANY, A PENNSYLVANIA CORPORATION, AND THE ELIZABETHTOWN WATER COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1974.
Decided August 7, 1974.
*484 Before Judges COLLESTER, LYNCH and MICHELS.
Mr. Raymond W. Troy argued the cause for defendant-appellant and cross-respondent The Reading Company (Messrs. Lum, Biunno & Tompkins, attorneys; Mr. Michael F. Spiessbach on the brief).
Mr. Frank Gallagher argued the cause for defendant-appellant and cross-respondent The Elizabethtown Water Company (Mr. Gallagher and Messrs. Hueston, Hueston & Sheehan, attorneys; Mr. James G. Leonardson and Mr. Clifford J. Sheehan on the brief).
Mr. Albert G. Besser argued the cause for the plaintiff-respondent and cross-appellant (Messrs. Hannoch, Weisman, Stern & Besser, attorneys; Mr. Joseph J. Fleischman on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Plaintiff Harriet Acken, individually and as executrix of the estate of Robert C. Acken (decedent), instituted this action to recover damages for the wrongful death of decedent, her husband, as the result of an accident at a railroad crossing. The action was originally instituted against defendants The Reading Company (railroad) and its engineer James Allen Campbell. At the first pretrial *485 conference Campbell was eliminated as a defendant. The complaint was amended thereafter to join defendant Elizabethtown Water Company (water company).
Acken was employed by H.W. Alward Construction Co., an independent contractor, which was engaged in performing construction work on the premises of the water company at the time of the accident. On January 8, 1969, at about 8:45 A.M., Acken, with Robert Gifford, a co-employee, as a passenger drove his pick-up truck from the water company property in a northerly direction on a road known as Polhemus Lane intending to cross a certain railroad crossing located thereon. As Acken reached the crossing the pick-up truck was struck by a Reading train, and Acken was killed. The train's headlight was on and the bell ringing, although the horn was not being sounded. The engineer of the train did not see the pick-up truck until the moment of impact due to a white pick-up truck which was parked on railroad property near the track. The distance from the entrance of the water company property to the crossing was about 60 feet. Gifford, who testified, over objection, that Acken had the habit of coming to a stop to make observations on the several occasions he had driven with him over the crossing, also testified that at the time of the accident Acken was driving at about ten miles an hour, the heater was on, the windows were rolled up, and the two were engaged in light conversation. About three-quarters of a mile back from the crossing towards the plant, they stopped once to use the "inter-com" radio to call someone for equipment. The next thing Gifford remembered was getting hit by something and waking up under a train. He testified that he had no recollection of what transpired between the radio conversation and waking up after the accident.
The jury rendered a verdict in favor of plaintiff against the railroad and the water company in the amount of $170,000, and the trial judge added interest in the amount *486 of $25,962.25, pursuant to R. 4:42-11. The case was submitted to the jury with special interrogatories. The jury found both defendants guilty of willful and wanton negligence, and decedent not guilty of contributory negligence. The interrogatories submitted to the jury provided that if there was a finding of willful and wanton negligence, the jury was not to answer the interrogatories asking whether they found defendants guilty of negligence. With respect to the survival action, the jury found that Acken did not survive the accident and did not suffer conscious pain and suffering, and consequently did not award damages therefor. Defendants moved for a new trial, which motion was denied. They both appealed from the judgment entered against them and from the order denying their motions for a new trial. Plaintiff cross-appealed from the jury's refusal to award punitive damages.
The railroad contends at the outset that the trial court erred in submitting to the jury the issue of whether the crossing at Polhemus Lane was a public or private crossing, and in charging the jury as to certain statutory regulations applicable only to public crossings because there was no evidence that the crossing was other than private; and that the trial court should have so held as a matter of law.
The Legislature has established statutory regulations for the operation of railroad trains at grade crossings. N.J.S.A. 48:12-54 to 58. These statutes apply to grade crossings at public roads, and in pertinent part provide as follows:
N.J.S.A. 48:12-54:
Every company operating on a fixed track or tracks, freight or passenger trains or cars, shall provide protection to pedestrians and the traveling public at every crossing of its tracks by any public road. Such protection may be in the form of safety gates, flagmen, electric bell, electric signs or other recognized system of alarm or protection approved by the Board of Public Utility Commissioners.
N.J.S.A. 48:12-57:
Every railroad company shall place on each engine a bell weighing not less than 30 pounds which shall be rung continuously in approaching *487 a grade crossing of a highway, beginning at a distance of at least 300 yards from the crossing and continuing until the engine has crossed such highway, or a whistle or horn operated by steam, air or electricity, which shall be sounded, except in cities, at least 300 yards from the crossing and at intervals until the engine has crossed the highway.
N.J.S.A. 48:12-58:
Every railroad company shall install and maintain at each highway crossing at grade a conspicuous sign with such inscription and of such standard and design as shall be approved by the Board of Public Utility Commissioners, so as to be easily seen by travelers.
The railroad's operating Rule 14L provides that at public crossings engine whistles will be sounded, and operating Rule 14P provides that a succession of short sounds of the locomotive whistle or horn be used as an alarm for persons or livestock on the tracks. The trial judge charged, in substance, the aforementioned statutory regulations and railroad operating rules, instructing the jury in part:
If you find that the Polhemus Lane crossing was private at the time of the accident, then the prescribed protective measures were not required by statute.
Our study of chapter 12 of Title 14 fails to reveal the existence of a statutory definition of "public road" or "highway." Chapter 15 of Title 48, however, provides:
The word "street" when used in this chapter means and includes a public street, avenue, highway, road, alley, lane, plaza, square or other public place. [N.J.S.A. 48:15-1; emphasis supplied]
It has been held under the Traction Act of 1893, the predecessor of the above statutory section, that a street laid out by an owner upon his own land and dedicated by him to the public was not a street or a highway within this section in the absence of acceptance by the public authorities, where they assumed no care for the street despite occasional use for passage by pedestrians or vehicles. Pease v. Traction Co., 69 N.J.L. 165, 167 (Sup Ct. 1903). In Parsippany-Troy Hills Tp. v. Bowman, 3 N.J. 97, 104 (1949), where our Supreme *488 Court was concerned with the question of whether a certain highway was a "public road," the court set forth the three methods by which a public highway may be established, as follows:
1  By a laying out according to the statute;
2  By the uninterrupted use and enjoyment by the public of the road as a highway for not less than 20 years without any circumstances to negative the intention to dedicate, and
3  By the actual dedication by the owner to the public as a highway.
In Olsen v. Erie Railroad Co., 99 N.J.L. 485 (E. & A. 1924), the court affirmed a nonsuit for plaintiff whose decedent was killed while walking across defendant's tracks at a crossing built by a certain company and used only by those doing business with that company. The court held that the crossing was a private one, and that a jury could not have found otherwise. It was stated by the court:
There is no evidence that the Edison crossing is a public highway. The evidence is to the contrary. A public highway can be established by prescription (Riverside v. Pennsylvania Railroad Co., 74 N.J.L. 476, 479), even across the right of way of a railroad company. (Drelich v. Erie Railroad Co., 91 Id. 600, 602.) One of the essential attributes of a prescriptive right is the use by the public of the neighborhood. Riverside v. Pennsylvania Railroad Co., supra. In our view, such a public use is not made out by proof of the use of a crossing, either by the employees of or those having business with the concerns to whose plants or docks it gives access (Staub v. Public Service Railway Co., 97 Id. 297), or by one individual. (Wood v. Hurd, 34 Id. 87.)
In the instant case, the testimony showed that, with the exception of one police captain, the only persons using the Edison crossing were its employees, or invitees and boat captains, employed on barges using the docks. Their use of the crossing, in such circumstances, was not indiscriminate and in their capacity as members of the general public, but because of their relationship to particular property owners or users. [at 487]
The test employed in the Olsen case was quoted with approval by the Appellate Division in Stallone v. Schiavone-Bonomo Corp., 103 N.J. Super. 170 (App. Div. 1968), *489 certif. den. 53 N.J. 226 (1969), a workmen's compensation case, where the pivotal issue was whether the petitioner's husband was killed while on a public highway. The court stated:
Appellant's proofs fell short of the mark of supporting its contention that the paved strip was in fact a public street. The mere fact that the public was not excluded is not enough to create a use by prescription. The inquiry should be: Did those who passed and repassed over the strip use it indiscriminately and in their capacity as members of the general public, or did they do so because of their relation to particular property owners or users as, for example, appellant company? See Olsen v. Erie R.R. Co., 99 N.J.L. 485, 487 (E. & A. 1924). The record establishes that the latter was the actual situation. The private nature of the strip was not necessarily destroyed by the fact that it linked two city streets. Cf. Cerria v. Union News Co., 31 N.J. Super. 369, 372 (App. Div. 1954). [at 174]
In Webb v. W. Jersey and Seashore R. Co., 100 N.J.L. 204, 206 (Sup. Ct. 1924), the plaintiff was injured when she drove across an undisputedly private railroad crossing. Defendant railroad appealed a verdict in favor of plaintiff alleging, among other things, that the verdict was against the weight of the evidence. The court, in rejecting defendant's contention, noted that since the crossing was private the statutory provisions relating to required signals did not apply.
In Gifford v. Pennsylvania R. Co., 119 N.J.L. 397 (E. & A. 1938), where decedent was killed in driving across an undisputedly private crossing of defendant railroad, the court noted, with respect to the applicability of the original 1910 enactment of N.J.S.A. 48:12-83 (which mandates that contributory negligence is a jury question in any crossing accident case where the crossing has no protective device):
It is not suggested that the statute of 1910 (Pamph. L., p. 490) applies, and probably not, as that act by its title is limited to crossings of public streets and highways, and, as already observed, the road in question was a private crossing. [at 397] *490 See also, Michael A. Scatuorchio, Inc., v. N.Y., S. & W.R.R. Co., 10 N.J. Misc. 528, 529-531, 159 A. 704 (Sup. Ct. 1932); 74 C.J.S. Railroads § 1, at 318 (1951).
Whether a road is a "public" road or highway is ordinarily a jury question. See Parsippany-Troy Hills Tp. v. Bowman, supra, 3 N.J. at 103. It is generally held that "[i]n an action by a person injured in using a path across railroad tracks, it is usually left to the jury to determine the extent and length of the use of the path by the people in the vicinity of the crossing, and by the public generally, and consequently to determine whether the plaintiff in using the path is to be considered as an invitee or licensee permitted by the railroad company to use the path." (Emphasis added) 65 Am.Jur.2d, Railroads, § 420, at 591 (1972). However, when it is clear that reasonable men cannot disagree as to a conclusion, the general rule is that the question is one of law for the court and not for the jury. Brogan v. Passaic Daily News, 22 N.J. 139, 149 (1956).
* * * [W]hen the proof of a particular fact is so meager or so fraught with doubt that a reasonbly intelligent mind could come to no conclusion but that the fact did not exist there is no question for the jury to decide. Likewise, when the proof on a question of fact is so strong as to admit of no reasonable doubt as to its existence, again, there is no question for the jury to decide. In both these cases the court must make the determination and advise the jury accordingly * * * [Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 493 (1956); citations omitted]
Our review of the record below convinces us that there was absolutely no proof presented that the railroad crossing at Polhemus Lane was a public crossing. The evidence as to the nature of Polhemus Lane was to the contrary. Two telegrams sent by defendant railroad were offered into evidence by plaintiff. Both, one addressed to the Department of Public Utilities, and the other to the Director of the Division of Railroads, referred to the crossing as "Elizabethtown Water Works' private crossing." The evidence established that there was a sign posted on the road facing the approach to the *491 railroad's property which stated "private crossing." James H. Thompson, a coemployee of decedent, in his testimony referred to the crossing going into the plant as "that private lane." R.M. Fetzer, chief of the Bridgewater Township Police, testified that he believed Polhemus Lane to be private. Also, Daniel Cardone, shop steward at the water company, another witness called by plaintiff, testified that he knew the difference between a private and a public crossing and that Polhemus Lane was a private crossing. Jerry Caden, the water company's plant superintendent, also testified that it was his understanding that the intersection under discussion was a private crossing. Howard Clark, township engineeer of Bridgewater, testified that Polhemus Lane was designated on the township's tax map as a private road. Finally, Donald Melley, the brakeman of the train, testified that to his knowledge it was a private crossing.
The evidence relied upon by plaintiff, that plant employees, construction workers, salesmen and delivery men traversed this crossing, is not proof of a use of the crossing that was "indiscriminate and in their capacity as members of the general public," but, rather, is proof of a use "because of their relationship to particular property owners or users." See Olsen v. Erie Railroad Co., supra. Nor does the evidence, which plaintiff also relies on, that occasional hunters or fishermen traversed the crossing, despite their being prohibited from doing so, tend in any way to prove the requisite use in order to constitute the crossing a public one. Thus, we are of the view that it was error for the trial court to submit to the jury for their determination the issue as to whether the Polhemus Lane crossing was a "public" or "private" crossing, thus permitting the jury to consider the statutory regulations and the railroad operating rules which apply only to public crossings. We hold that the trial judge should have determined this issue as a matter of law under the facts present in the record. Since the trial judge did not submit special interrogatories to the jury as to whether the Polhemus Lane crossing was a public or private crossing, there is absolutely *492 no way to determine whether the jury found the crossing to be a public or private crossing, and whether the finding of willful and wanton negligence was based upon the violation of the statutory regulations and railroad operating rules applicable solely to public crossings. The error therefore was "clearly capable of producing an unjust result" and of denying the railroad a fair trial and a decision on the merits. The error in our view constituted reversible error, mandating reversal of the judgment against the railroad. See R. 2:10-2; State v. Macon, 57 N.J. 325, 337-338 (1971).
The railroad and the water company contend that the trial court also erred in submitting the question of willful and wanton negligence to the jury and in denying their motions for dismissal and entry of judgment with respect to this charge.
The elements of willful and wanton negligence were well defined by our Supreme Court in the case of McLaughlin v. Rova Farms, Inc., 56 N.J. 288 (1970), wherein it was stated:
In our State in order to recover for injuries allegedly produced by willful and wanton misconduct, it must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. [Citations omitted]

* * * * * * * *
As this Court indicated in Krauth v. Israel Geller and Buckingham Homes, Inc., supra, 31 N.J. 270, willful and wanton misconduct signifies something less than an intention to hurt. To establish that condition it is not necessary that the defendant himself recognize his conduct as being extremely dangerous; it is enough that he know, or has reason to know, of circumstances which would bring home to the realization of the ordinary reasonable man the highly dangerous character of his conduct. Taylor v. Lawrence, supra [229 Or. 259], 366 P.2d [735], at 739; Restatement, Torts 2d, supra, § 500, comment c.p. 589. [at 305-306]
The thrust of plaintiff's argument, that the railroad was guilty of willful and wanton negligence, as we glean it *493 from plaintiff's brief and as articulated by plaintiff's counsel at oral argument, is twofold. First, plaintiff charges that the railroad ignored the menace of cars parked near the crossing and did not change its operating policies accordingly. Specifically, it is charged that the railroad did not require its engineers to sound a horn as it approached this crossing and failed to provide a warning of an approaching train to those who traveled on Polhemus Lane, in spite of the fact that the railroad had "actual knowledge that the parking of the vehicles created an obstruction and imposed a danger." Second, plaintiff charges that the railroad treated the crossing as a private crossing and, therefore, refused to comply with the statutory regulations and railroad operating rules for the operation of trains at grade crossings. With respect to the latter contention, since we have held that the Polhemus Lane crossing was not a public crossing but rather a private crossing, and that the statutory regulations and the railroad operating rules for railroad trains at public crossings did not apply, the railroad was correct in its determination that the Polhemus Lane crossing was a private crossing, and that it was not under a duty to comply with the statutory regulations and certain of its operating rules relating to public crossings. The railroad was not legally required to sound a horn at the Polhemus Lane crossing, and its alleged refusal to order its engineers to do so does not constitute willful and wanton negligence. With respect to the former charge, we are of the view that there was not sufficient evidence produced to create a triable issue of willful and wanton negligence. The evidence present in the record and the most favorable legitimate inferences to be drawn therefrom establish that defendant knew that employees of the water company and others, such as Acken, doing business with the water company, frequently traveled the crossing at Polhemus Lane; that the parking of cars obstructed a portion of the view of the tracks at a certain point, and that there had been some complaints regarding the trains coming through the crossing without sounding their horns. While these facts *494 and circumstances support a charge of ordinary negligence, when considered in the light of common experience and the judicial precedents in this State, they do not constitute conduct sufficient in our view to establish willful and wanton negligence on the part of the railroad.
In Staub v. Public Service R. Co., 97 N.J.L. 297 (1922), our former Court of Errors and Appeals affirmed a judgment of nonsuit in an action by a plaintiff injured when his vehicle was struck by the defendant's trolley car being operated over a private right-of-way. The court held, contrary to the defendant's assertion, that there was no evidence of "intentional wrongdoing which amounts to willful or wanton injury." In reaching this result, the court stated:
The appellant further contends that the case should have been submitted to the jury, because the evidence discloses that the defendant's motorman was guilty of wanton and willful injury to the plaintiff's property. The appellant argues that the road operation required the use of many trucks and teams for the hauling of gravel; that the defendant's servants were aware that these trucks and teams were passing over the crossing; that the crossing was obstructed by shrubbery so that one driving a truck could not obtain a view of the tracks towards the east until within a few feet of it; that with knowledge of these conditions a motorman who propelled his car rapidly towards the crossing without warning was guilty of inflicting a willful and wanton injury. This argument is specious. These facts do not constitute that intentional wrong-doing which amounts to willful or wanton injury.
To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. 29 Cyc. 509. There is no evidence in this case that the motorman of the car could see the truck upon the track and after such discovery with ample opportunity to stop his car before a collision would occur, deliberately failed to do so. There was therefore no evidence of willful or wanton injury which entitled the plaintiff to a submission of this question to the jury. [at 299-300]
The language of the Staub case was quoted with approval by our present Supreme Court in Egan v. Erie R. Co., 29 *495 N.J. 243 (1959), wherein the court affirmed the granting of a summary judgment in favor of defendant railroad where an infant plaintiff attempted to board a moving freight train operated by defendant and was severely injured when she slipped and fell under the wheels of one of the cars. The evidence there established that while none of the members of the train crew observed the infant plaintiff prior to the accident, the employees of defendant had prior knowledge that children were accustomed to playing upon the tracks in the vicinity where the accident occurred and had on occasions chased them. Plaintiff there argued, as does plaintiff here, in effect, that defendant had actual notice of the presence of the infant plaintiff and omitted to take the necessary precaution of having watchmen on the property and, therefore, was guilty of willful and wanton negligence. In rejecting this argument, the court stated:
The claim of wanton negligence in the defendant's failure to have watchmen present at the scene at best supports an allegation of ordinary negligence. In essence, plaintiffs' claim is based upon the railroad's failure to take precautions against reasonably foreseeable harm to children coming upon the right of way after it had notice that children did so trespass.
"To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." Staub v. Public Service Railway Co., 97 N.J.L. 297, 300 (E. & A. 1922).
See also King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951). Even ignoring the fact that in these circumstances a railroad is ordinarily under no duty to provide watchmen, Kaproli v. Central R. of New Jersey [105 N.J.L. 225], supra, its failure to do so falls far short of the standard required for a finding of willful or wanton conduct. Willfulness and wantonness are conclusions to be drawn from a given set of facts and circumstances. When in the light of common experience and judicial precedents the facts and circumstances alleged clearly do not constitute such conduct, the mere fact that plaintiffs characterize them as willful or wanton is not sufficient to create a triable issue. Summary judgment was properly entered for the defendant. [at 254-255.]
*496 Accordingly, we hold that the trial court erred in submitting the question of willful and wanton negligence on the part of the railroad to the jury and in denying the railroad's motion for judgment with respect to that charge as set forth in the amended complaint.
The charge of willful and wanton negligence against the water company is also two-pronged. First, plaintiff contends that the water company was desultory in its reaction to complaints of the dangers created by the railroad's trains going through the crossing without sounding their horns. Secondly, plaintiff contends that the water company created the parking conditions partially obstructing the view at a certain point by not permitting construction workers to park on its property. We see no merit whatsoever in these charges. The property on which the cars were parked was not owned by the water company but by the railroad. It was not under the control of the water company. While nine months after the accident the Public Utility Commission directed the railroad to erect a fence to prevent parking on the railroad right-of-way, and the water company erected the fence with the railroad's permission, that does not establish that the water company had the right or the duty to bar parking on the railroad right-of-way at the time of the accident. It was also established that the water company, upon receipt of a complaint or complaints regarding the crossing (apparently three in a six-year period), communicated with the railroad to discuss the lack of warnings given by the trains as they neared the Polhemus Lane crossing. The attempt to correct this condition by the laboratory supervisor of the water company, Lewis, was unsuccessful, and he, in turn, referred the matter to the plant superintendent of the water company, Caden. Caden also attempted to communicate with the railroad through one of its representatives, who advised him that the matter was not the responsibility of the water company. Plaintiff's argument, that since the water company failed to do anything further, *497 specifically in not going to the Public Utility Commission to force such action by the railroad, it was guilty of willful and wanton negligence, is not persuasive. The evidence presented, including the most favorable inferences that can reasonably be drawn therefrom, while supportive of a negligence charge against the water company, certainly is not of such character as to support a charge of willful or wanton negligence on the part of the water company within the principles enunciated by our courts as discussed above.
Accordingly, we hold that the trial court also erred in submitting to the jury the question of the alleged willful and wanton negligence of the water company and in denying the latter's motion for judgment with respect to that charge as set forth in the amended complaint.
The railroad and the water company both contend also that Acken was guilty of contributory negligence as a matter of law, and that the trial court erred, therefore, in failing to enter judgment in their favor.
It is well established that the mere occurrence of the collision does not indicate per se negligent conduct on the part of decedent. Ackerley v. Pennsylvania R. Co., 130 N.J.L. 292, 296 (E. & A. 1943). "[C]ontributory negligence is an affirmative defense to be proved; and ordinarily the issue is one for the fact-finding tribunal." Battalglia v. Norton, 16 N.J. 171, 179 (1954). Only in the clearest case of contributory fault, where the contrary hypothesis is not fairly admissible, does the question become one of law. Pangborn v. Central R. Co. of N.J., 18 N.J. 84, 93 (1955). Where different minds may reasonably come to different conclusions as to the facts, or as to the inferences derivable from the facts, whether controverted or not, the question is one for the triers of fact. Shutka v. Pennsylvania R. Co., 74 N.J. Super. 381, 389 (App. Div. 1962), certif. den. 38 N.J. 183 (1962). To justify a directed verdict on such grounds, the contributory fault of plaintiff must appear clearly and conclusively as a fact or as a necessary and exclusive *498 inference that would be drawn by all reasonable persons exercising fair and impartial judgment. Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415, 422 (1951).
When the facts and circumstances here involved are considered in the light of the foregoing principles, we are satisfied that the issue of Acken's contributory negligence was properly submitted to the jury by the trial court below. The jury could reasonably have found from the evidence and the favorable inferences which might reasonably have been drawn therefrom; that the pick-up truck parked near the tracks interfered with the vision of both Acken and the railroad's engineer, and that even though Acken had stopped before crossing the track (a reasonable inference to be drawn from the testimony of his fellow employees that his habit and custom was to stop at the crossing), he could not see the train approaching because his vision was blocked by the pick-up truck, and he could not hear the approach of the train (which admittedly was not sounding its horn) because the truck windows were rolled up, the heater was operating, and there was some conversation between himself and Gifford. The jury could reasonably have inferred from all of the evidence that Acken exercised that degree of care and precaution which a reasonably prudent person would exercise under like circumstances. See George Siegler v. Norton, 8 N.J. 374, 383 (1952).
Accordingly, we hold that the trial court properly denied the motions of the railroad and the water company for judgment based on the alleged contributory negligence of Acken as a matter of law and properly submitted that issue to the jury for their consideration.
Since we are of the view that the trial judge erred, with respect to the railroad, in submitting to the jury the issue of whether Polhemus Lane was a public or a private road and in instructing the jury as to the statutory regulations and the railroad's operating rules applicable only to public *499 crossings, and in submitting to the jury the question of willful and wanton negligence on the part of both the railroad and the water company, and in denying defendants' motions for judgment with respect to that charge, we hold that the judgments obtained by plaintiff against both the railroad and the water company must be reversed and the matter remanded for trial. We direct that on remand the trial court enter judgment in favor of the railroad and the water company on those counts of the amended complaint charging willful and wanton negligence with respect to each, and that the matter be retried against the railroad and the water company on the issues of their negligence and of decedent's contributory negligence.
In view of the foregoing holding, it is unnecessary to decide the several other issues raised by the railroad and the water company or to consider plaintiff's contention raised on cross-appeal that she is entitled to punitive damages.
Reversed and remanded.