HERBERT HUELS, PLAINTIFF-APPELLEE, v. GENERAL ELECTRIC COMPANY, DEFENDANT-APPELLANT.

Submitted January 15, 1946—Decided April 12, 1946.

Before Justices BODINE and PERSKIE.

For the appellant, *Hopkins, Vorburger & Dickson* (*Herman G. Vorburger,* of counsel).

For the appellee, *Abraham Warren* (*Andrew O. Wittreich,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. We are concerned in this case with the master's liability for the alleged breach of its duty to provide its servant with equipment, ingredients and tools which are reasonably safe and fit for the purpose to which they are to be applied.

This is a common law action. The servant, Herbert Huels, sued his master, General Electric Company, a corporation, to recover damages for the injuries which he allegedly sustained to his hands while engaged in the performance of his regular work on a degreasing tank belonging to his master. The master's liability was bottomed upon the prem-

ise that it had failed to discharge its common law duty, the "underlying obligation" of which is "the use of reasonable care." *Cf. Tompkins* v. *Marine Engine and Machine Co.,* 70 *N. J. L.* 330, 332; 58 *Atl. Rep.* 393.

From the record as submitted, we ascertain that the master was engaged in the business of manufacturing electrical products and appliances. In the process of manufacturing these products and appliances it became necessary that some of them be degreased. For that purpose, the master provided a degreasing tank. No purpose will be served in detailing the construction of the tank. For the safety of it, as such, is not in issue. It should suffice briefly to state how the tank is operated. A solvent known as triclorethylene is poured in the bottom of the tank over which there is a steel grating. The tank is encircled by a water jacket about one and one-half feet from the top. The solvent is vaporized by gas heaters underneath the tank. The vapor rises to the water jacket which condenses the vapor and thus keeps it from flowing out of the tank. The larger products to be degreased are placed in the tank and the smaller ones in a wire basket. Both are lowered into and raised from the vapor in the tank by metal hooks. When removed they are free from grease, and are practically dry but hot.

The master caused the servant to be instructed as to how to lower the products into the tank with the hooks and basket for the purpose of degreasing and how to raise them out from the tank. About November 1st, 1941, six weeks after he had been doing other work for his master, the servant began to work on the tank and continued so to work until May, 1942. In doing his work his hands came into contact with the triclorethylene which he alleges the master knew was dangerous, harmful and injurious to him. *Ergo,* the master breached its common law duty.

From the agreed state of case (*R. S.* 2:32–209) we ascertain that the master denied liability on the grounds that there was no proof that it had failed to supply proper appliances, that the liquid was, to its knowledge, dangerous and that it was free from actionable negligence, that the servant assumed the risk of his employment, and was guilty of contributory

negligence in not using the hooks and appliances provided by it. The parties submitted their respective proofs.

The master's motions for a nonsuit and for a directed verdict, based upon the stated defenses, were denied. The trial judge, who sat without a jury, entered a judgment of $500 and costs in favor of the servant and against the master. Hence this appeal.

The denials of the aforesaid motions made for the master constitute the specification of determinations with which the master is dissatisfied in point of law. We think the trial judge fell into reversible error.

The applicable law is settled. Concisely stated, it is the common law duty of the master "to use reasonable care to furnish proper tools to his workmen." *Campbell* v. *Gillespie Co.*, 69 *N. J. L.* 279, 281; 55 *Atl. Rep.* 276. The "underlying obligation" of the master is to use, as interchangeably stated, "reasonable care," "reasonable diligence." *McDonald* v. *Standard Oil Co.*, 69 *N. J. L.* 445, 447; 55 *Atl. Rep.* 289. The master discharges that obligation by providing those tools which are "in common and ordinary use," those which are "reasonably safe and fit" for the purpose for which they are to be applied. *Tompkins* v. *Marine Engine and Machine Co.*, *supra* (at *p.* 332). On the other hand, the servant assumes, among other things, the risks "ordinarily incident to his employment" as well as those "special dangers which are plain and obvious to one of ordinary skill and understanding." *McDonald* v. *Standard Oil Co.*, *supra* (at *p.* 448). The servant in assuming, as he may, that the master had discharged its obligation to him, *i. e.*, to "exercise reasonable care and skill" in providing for his safety, is "not guilty of contributory negligence." *Per contra,* "if the servant is warned or notified of a danger arising out of the master's negligence, or if the danger becomes so obvious that a reasonably prudent servant. under the circumstances, would have observed it, no action will lie against the master for an injury to the servant." *McDonald* v. *Standard Oil Co.*, *supra* (at *p.* 449).

The servant was, of course, obliged to prove his pleaded cause of action. He was obliged properly to prove the actionable negligence charged. *McCombe* v. *Public Service Rail-*

*way Co.*, 95 *N. J. L.* 187, 189; 112 *Atl. Rep.* 255; *Klatt* v. *Hoboken Bank for Savings*, 126 *N. J. L.* 96, 98; 18 *Atl. Rep.* (*2d*) 602; *Grugan* v. *Shore Hotels, &c., Corp.*, 126 *N. J. L.* 257, 262; 18 *Atl. Rep.* (*2d*) 29. This the servant failed to prove. The safety of the place at which the servant worked and the safety of the tools with which he did the work are not in issue. And there is no proof that the master knew, or should have known, that the triclorethylene was, as the servant alleged, dangerous, harmful and injurious to his hands. As a matter of fact none of the other servants who did the same work suffered any ill effects therefrom. This leaves only one other claim, that the master failed to provide the servant with gloves as a protection against the heat of the hooks used to remove the metals as well as against the heat of the smaller objects to be removed from the basket. No such claim is set down in the state of demand. Assuming, however, that this claim (gloves) may be embraced in the word "equipment," there is no proof to support the conclusion that the master's failure to supply the gloves was the proximate cause of the alleged injuries suffered by the servant. Although the servant denied the claim of the master that he was supplied with gloves for his degreasing work, he admitted, on cross-examination, that there were gloves around but that they were torn, that they had holes in them, and that in order to work faster he, as well as other fellow employees, frequently worked with their bare hands. There was proof that the servant prior to the work for the herein named master, worked for a concern where he operated an old fashioned hand elevator controlled by ropes and it was necessary to take hold of the ropes to start and stop the elevator. The triclorethylene and not the heat of degreased products was the pleaded cause of the servant's injuries.

But be all that as it may, the servant was no stranger to his work. He was instructed in the use of the tank, how to lower the objects into the tank and raise them therefrom. Framed printed instructions for the use of the tank were fastened to the wall right by the tank. Hooks were generally hung on the tank when not in use. There is no suggestion that the servant was not blessed with ordinary skill and under-

standing. He well knew, from six months of experience, that the metals were hot when he removed them from the tank. And he knew, or was charged with knowing, of the risks, if any, incident to his work. There was no proof, as we have indicated, that the master knew or should have known that the liquid was dangerous, harmful or injurious. The servant, in the stated circumstances, clearly assumed the risks, if any, of which he complained, because they were incident to his employment within the meaning of the aforestated principles of law.

In other words, the servant had failed to prove the actionable negligence charged. The denial of the master's motions was therefore error as a matter of law remediable on appeal. *R. S.* 2:32–204. *Cf. Goldstein* v. *Barclay Amusement Corp.,* 123 *N. J. L.* 166, 170; 8 *Atl. Rep.* (*2d*) 171; *DeVinney* v. *Prudential Insurance Co.,* 128 *N. J. L.* 270, 275; 25 *Atl. Rep.* (*2d*) 254; *Soriano* v. *Greenfield,* 131 *N. J. L.* 401, 403; 36 *Atl. Rep.* (*2d*) 750.

The judgment is reversed, with costs.