BEN SCHLOSSBERG, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. THE JERSEY CITY SEWERAGE AUTHORITY, *ET AL.*, DEFENDANTS, AND HARRY J. THOUROT, PETER LA-MORT, AND THOUROT & LaMORT, A PARTNERSHIP, *ET AL.*, AGGRIEVED PARTIES-APPELLANTS.

HARRY J. THOUROT, PETER LaMORT AND THOUROT & LaMORT, A PARTNERSHIP, PLAINTIFFS-APPELLANTS, v. THE TRUST COMPANY OF NEW JERSEY, BEN SCHLOSSBERG AND S. JOHN FAMIGLIETTI, DEFEND-ANTS-RESPONDENTS.

Argued April 5, 1954—Decided April 5, 1954.

362

Mr. *Isadore Glauberman* argued the cause for appellant Thourot.

Mr. *Victor S. Kilkenny* argued the cause for appellant LaMort.

Mr. *Jerome C. Eisenberg* argued the cause for cross-appellant-respondent The Trust Company of New Jersey (*Mr. Thomas E. Lynch*, attorney).

Mr. *Theodore C. Baer* argued the cause for respondents Schlossberg and Famiglietti (*Mr. John J. Hanlon, Jr.*, attorney).

*Mr. David Stoffer* argued the cause for defendants-applicants for intervention, Joseph Miele Construction Co., Inc., and C. Salvatore & Sons (*Messrs. Stoffer and Jacobs*, attorneys).

*Mr. John J. Breslin, Jr.*, argued the cause for defendants-applicants for intervention, George M. Brewster & Son, Inc., Terminal Construction Corp. and LaFerra Contracting Company, Inc. (*Messrs. Breslin & Breslin*, attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. ■ These are three appeals, consolidated by the Appellate Division and certified by this court of its own motion. Two of the appeals are from an interlocutory order entered March 12, 1954 in the Law Division in the proceeding in lieu of prerogative writ in which Ben Schlossberg and S. John Famiglietti are plaintiffs and the Jersey City Sewerage Authority and its members, the City of Jersey City and ten construction contractors are defendants. The third appeal is from two interlocutory orders entered March 9 and March 18, 1954 in the Chancery Division in an action in which Harry J. Thourot, Peter LaMort and Thourot & LaMort, a partnership, are plaintiffs and the Trust Company of New Jersey and said Schlossberg and said Famiglietti are defendants. None of the orders appealed from is an interlocutory order appealable under *R. R.* 2 :2–3; but, as matters of public importance are concerned, we concluded to consider the appeals upon the merits. See *Sunbeam Corp. v. Windsor-Fifth Avenue Corp.*, 14 *N. J.* 235 (1953). Following oral argument of the appeals on April 5, 1954 we directed that all three orders be vacated and set aside, and announced that this opinion would be prepared and filed in due course. *Cf. Stevenson v. Gilfert*, 13 *N. J.* 496 (1953).

The issues arise from the efforts of Schlossberg and Famiglietti as plaintiffs in the prerogative writ action to secure for the purpose of offering in evidence at the trial either the originals or photographs of checks drawn by Thourot or the partnership of Thourot & LaMort upon the Trust Com-

pany of New Jersey where each maintained a checking account. Schlossberg and Famiglietti subpoenaed Thourot as their witness. He and LaMort are licensed engineers and practice their profession as partners. Thourot is also Hudson County Engineer and the Mayor of Union City. He admitted that on June 2, 1950 he made a subcontract with Clyde Potts Associates, a consulting engineering concern which succeeded upon Clyde Potts' death to Potts' consulting engineering practice. Potts had entered into a contract with the Jersey City Sewerage Authority on April 19, 1950 to do the engineering work connected with the planning and construction of the Jersey City sewerage treatment plants and accessory projects. The Thourot subcontract was for part of this work, and Thourot testified that he had received partial payments thereunder from Clyde Potts Associates aggregating $171,500 and had deposited the payments in his personal account with the Trust Company of New Jersey. He further testified that he had made withdrawals therefrom. He refused, however, to produce the cancelled checks which the bank had returned to him. The trial judge cited him for contempt for such refusal and reserved decision after hearing.

Meanwhile Schlossberg and Famiglietti served a subpoena *duces tecum* upon the bank to produce the records in its possession concerning the accounts. Thourot and LaMort moved unsuccessfully to quash the subpoena. The bank officer who appeared in response to the subpoena testified that the only records of the cancelled checks in the bank's possession were the microfilmed photographs thereof comingled with other photographs which numbered 8,000 upon each microfilm reel. He further testified that compliance with the subpoena would require the processing of the reels through mechanical viewers to identify the checks sought and then the reproduction by an outside photographic concern of enlargements from the photographs to obtain copies acceptable for purposes of being offered in evidence. Thereupon the trial court entered the order of March 12, under appeal, modifying the terms of the subpoena *duces tecum* and directing the bank

to produce "enlargements or reproductions" of all checks of $500 or more drawn by Thourot or the partnership from June 1, 1950 to September 17, 1953, specifying that the Trust Company was to identify the checks from "all reels of microfilm containing photographs" thereof and was to have the photographs processed to obtain such enlargements or reproductions. See Banking Act of 1948, *L.* 1948, *c.* 67, *sec.* 247, *N. J. S. A.* 17:9A–247.

The Trust Company and Thourot and LaMort appeal from the order. None is a party in the prerogative writ action. We need not decide, however, the issue argued in the briefs whether Thourot and LaMort as non-party witnesses have the standing to appeal from an order not directed to them. It suffices that no challenge is interposed to the standing to appeal of the Trust Company to which the order is directed.

The connection to these events of the action in the Chancery Division is that before the determination by the Law Division judge whether Thourot and LaMort or the bank should respond to the subpoenas *duces tecum* severally served upon them, Thourot and LaMort instituted the Chancery Division action charging that the Trust Company had entered into an illegal agreement with Schlossberg and Famiglietti to provide the latter with enlarged reproductions of the microfilmed checks and seeking a restraint against performance of the alleged agreement. The Chancery Division on March 4, 1954 allowed them an interim restraint enjoining the Trust Company and Schlossberg and Famiglietti "from carrying out" the alleged agreement to "select the films of plaintiffs' checks and cause them to be printed and enlarged." The orders of March 9 and March 18, appealed by Thourot and LaMort but not by the Trust Company, are modifications of the interim restraint deemed necessary and appropriate by the Chancery Division judge to evidence that the interim restraint was not in anywise to be construed to enjoin the bank from responding to the subpoena *duces tecum* served upon it in the Law Division action.

The controversy as debated in the briefs is focused upon the relevancy of the evidence sought by Schlossberg and

Famiglietti to the issues framed by the pleadings and pretrial order in the prerogative writ action. Only the Trust Company fully argues the additional questions whether a bank owes a duty to a depositor to resist divulging the information preserved by the microfilm recordations of a depositor's cancelled checks which have been returned to the depositor, and, if the information is to be divulged, whether the bank is to be required to pay the not unsubstantial labor and out-of-pocket costs involved in the viewing of the microfilms to identify the recordations sought from among the 8,000 recordations on each reel and the enlargement and reproduction therefrom of photographs of sufficient size to be practicably useful as evidence. We do not think, in the absence of any argument except that of the Trust Company, that this is an appropriate case for the decision of those additional questions, particularly as in our view the order of March 12 must at all events be set aside because it commands the production of proofs utterly irrelevant and immaterial to any of the issues framed by the pleadings and pretrial order.

Neither the contract between the Authority and Clyde Potts nor the subcontract between Clyde Potts Associates and Thourot is brought into question in the prerogative writ proceeding. That action was brought September 17, 1953 to set aside seven construction contracts aggregating in excess of $31,000,000 awarded September 10, 1953 by the Jersey City Sewerage Authority to various companies joined with the Authority as co-defendants in the action. Plaintiff Schlossberg sues as a Jersey City resident and taxpayer. Plaintiff Famiglietti alleges that he sues as a member of the Authority, a claim strongly disputed by the defendants who contend that his initial appointment was void and that in any event he resigned on August 19, 1953, prior to the action of the Authority in awarding the contracts.

The plaintiffs' primary contentions upon which the relief demanded is predicated may be summarized from the pretrial order as follows: (1) that the Authority met on September 10, 1953 "secretly without notice to and without the knowledge or presence of S. John Famiglietti, a member of

said Authority"; (2) that the awards were made "without adequate and proper advertising for bids * * * without the advice and assistance of Authority member Famiglietti, in arbitrary and unlawful exercise of discretion, and without transacting the aforesaid business frankly and openly in the light of public scrutiny so that the public of Jersey City might know and judge their acts fairly"; (3) that the Authority acted "without receiving for the City, its taxpayers and sewer users the benefits of public competitive bidding, with the result that the bulk of the contracts-award is designed by the Authority to go to a single joint venture bidder consisting of five companies which joined for the purpose of limiting and excluding competitive bidding"; (4) that the "awarding was made before the adoption of the bond resolution by the defendant Sewerage Authority pursuant to *R. S.* 40:14A-10 and 12" and "before the said bond resolution had been adopted by the defendant Authority and submitted to and approved by the Board of Commissioners of Jersey City as required" by a certain ordinance, thus constituting the financial participation of the City unlawful; (5) that the Authority members "abused their discretion by awarding said contracts despite the reports by the Authority engineering experts that said contracts were approximately $3,000,000 in excess of their own estimate of a fair and reasonable price."

The defendants' answer and its contentions as set forth in the pretrial order meet each of plaintiffs' contentions *seriatim* and at length. There then follows in the pretrial order, under the caption "Legal Issues Raised by the Pleadings, as amended, to be Determined at Trial," the following issues agreed upon by the parties to be decided at the trial:

"(a) Status of S. John Famiglietti, (1) as to legality of appointment to the Authority; (2) effect of his letter of resignation; (3) estoppel.

(b) The legality of the awards made at the September 10, 1953 meeting of the Authority, and the legality of said meeting, of the joint venture bid.

(c) Interpretation of the Sewerage Authorities law, as to: (1) whether a bond resolution had to be adopted prior to such awards;

(2) whether the bond resolution subsequently adopted satisfies the statute and constitutes a ratification.

(d) The effect, if any, of the Jersey City Ordinance of September 15, 1953 on the validity of the awards.

(e) Whether the Authority abused its discretion under the law in making such awards."

Plaintiffs' brief says that "at the trial we also stated that we would prove [from the checks or photographs thereof] that a substantial portion of the $171,500 received by Mr. Thourot *did not remain* with Mr. Thourot" (italics are plaintiffs'). Phrased in the words of defense counsel at the trial, this was meant to charge "that the Thourot money obtained under this contract with Clyde Potts Associates was used to influence this Jersey City Sewerage Authority to award the contract to the contractors concerned."

In substance, then, plaintiffs in the prerogative writ action desired to have the canceled checks or the photographs thereof in order to prove fraud, bad faith and corruption on the part of the members of the Sewerage Authority. See *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433 (1952). But not only is the complaint wholly barren of allegations complying with the requirements of *R. R.* 4:9–1 that "In all averments of * * * fraud * * * breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated so far as practicable," but it is obvious that the allegations of the complaint as expanded upon in the pretrial order in compliance with *R. R.* 4:29–1 are absolutely sterile of any suggestion that their attack upon the contracts challenged by the action in any wise rests upon that ground.

 Our rules of court provide a simple and flexible procedural framework designed and purposed for the just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants. Each litigant has broad latitude to assert any ground of relief or defense supporting his position and is provided with broad discovery and pretrial procedures by which he may obtain all the facts material to the positions of both sides and is

allowed great freedom to form and reform his pleadings and the pretrial order accordingly. *Ajamian v. Schlanger,* 14 *N. J.* 483 (1954). However, the flexibility and liberality allowed by our procedural system to enable the litigants before actually going to trial to identify and agree upon the issues really in controversy between them are not to be twisted into license to roam at will at the trial outside the agreed upon issues framed in that manner and reduced to expression in the pretrial order. Litigants may move about with greatest freedom during the pleading, discovery and pretrial stages of the action, but after the framework of the case has been settled under the pleadings and the pretrial order, the introduction of additional issues or a shift of ground from those agreed upon may be made over timely and meritorious objection only as permitted by *R. R.* 4:29–1($b$)(15) and 4:15–2 applicable to amendments offered after entry of the pretrial order, or during trial.

The rules expressly contemplate the proper framing and explicit expression of the factual and legal issues in the pretrial order. New issues not raised by the pleadings are to be made the subject of appropriate amendment to the pleadings, *R. R.* 4:29–1($b$) (5), in addition to being included in the pretrial order. *R. R.* 4:29–1($b$) provides that the pretrial order "when entered, becomes part of the record, supersedes the pleadings where inconsistent therewith, and *controls the subsequent course of action unless modified at or before the trial or pursuant to* rule 4:15–2 *to prevent manifest injustice."* (Emphasis supplied.) The extraordinary importance ascribed to the pretrial order and the antecedent discovery techniques under our modern procedural scheme must ever be kept in mind by the bench and the bar. The revised rules regarding discovery and pretrial practice which became effective January 1, 1953 and are now *R. R.* 4:16 to 4:29, inclusive, are the product of careful study of our experience with discovery and pretrial procedures in the five years since their introduction in 1948. The revisions were made effective only after bench and bar were provided with the "Manual of Pretrial Practice" and after the revisions

were fully explained at a number of conferences of bench and bar held throughout the State. Among the express aims of the manual and of the conferences was to emphasize the significant part which discovery and pretrial practice play in our modern civil procedure and the important change effected by them from our practice under the former court system. Their role in the attainment of the just and proper disposition of an action is not less, but if anything more, important than that of the trial itself, and bench and bar share jointly the responsibility to govern the prosecution of the action accordingly.

██ ██ It is evident from the pretrial order in the instant prerogative writ case that the issues agreed upon to be determined at the trial, however broadly interpreted, do not embrace an issue of fraud, bad faith and corruption of Authority members in the awards of the construction contracts. Plaintiffs gain no comfort from the provision of R. R. 4:15–2 that "When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order." The several counsel for the defendants strenuously objected from the outset that for plaintiffs' asserted purpose the evidence embodied in the cancelled checks or the photographs thereof if produced was irrelevant because outside the issues framed by the pleadings and pretrial order.

Defendants' reiterated objections at the trial of the prerogative writ action put plaintiffs on ample notice that the fraud issue was not within the issues set forth in the pretrial order, if indeed, in the face of the unambiguous phrasing of the pretrial order itself, which is fully consistent with the complaint, there can be even a color of merit to their insistence that the proofs were relevant to the issues therein set forth. Yet they made not the slightest effort to avail themselves of the opportunity afforded by R. R. 4:15–2 providing that

"* * * If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings and pretrial

order, the court may allow the pleadings and pretrial order to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. * * *"

Plaintiffs may have had their own reasons for not offering such amendments, but upon their failure to do so it became the duty of the trial judge in the circumstances to refuse them the aid of the court. *Cf. Ajamian v. Schlanger, supra.*

 Thourot's expressed ground for his refusal to produce the original cancelled checks was that the subpoena *duces tecum* requiring their production "was in violation of my constitutional rights of privacy." He asserts the same argument against the order upon the bank. Whatever substance there may be in such a reason, it can mean no more than that upon grounds of demonstrated irrelevancy the courts should not aid parties seeking such proofs by compelling obedience to a subpoena *duces tecum* served upon the witness. Except as he may be relieved from compliance with the subpoena *duces tecum* upon appropriate motion under *R. R.* 4:46–2 because the subpoena is "unreasonable and oppressive," or is excused from compliance because he would be incriminated thereby or because the matter is otherwise privileged, the duty owed by every witness to the State to aid in the quest for truth in the administration of justice makes it compulsory that he appear and produce documentary evidence in his possession and, if required, to testify concerning it. The witness is not the judge of the relevancy of the matter. The settled rule is that "the witness has no privilege to refuse to disclose matters irrelevant to the issue in hand," 8 *Wigmore on Evidence* (*3d ed.* 1940), *sec.* 2210; *United States v. Bryan,* 339 *U. S.* 323, 70 *S. Ct.* 724, 94 *L. Ed.* 884 (1949); *In re City of Newark,* 118 *N. J. L.* 533 (*Sup. Ct.* 1937); 58 *Am. Jur., Witnesses, p.* 40. And no such privilege is to be implied in this state from the language of our statute *N. J. S.* 2A:81–4 providing that "Except as otherwise provided by the statute, a witness shall not be excused

from answering any questions relevant and material to the issue." *Cf. In re Pillo,* 11 *N. J.* 8 (1952).

The error of the trial judge here was in improperly and mistakenly exercising his discretion in making the order upon the bank and in denying motions to quash the subpoena *duces tecum* upon the bank made by independent counsel on behalf of Thourot and LaMort and in overruling the objections interposed by the defendants in the action. The common ground of opposition was the patent irrelevancy and immateriality of the proofs for the purpose plaintiffs admittedly desired them. When plaintiffs failed to offer amendments to add the alleged bad faith, fraud and corruption of the Authority members as an issue for determination, judicial discretion was invoked and they should have been denied the aid of the court. The maintenance of the integrity of the rules of court and the avoidance of confusion and the furtherance of the orderly conduct of trials and the due administration of justice required that the bank be entirely relieved of compliance with the subpoena *duces tecum* in the circumstances. See *State v. Donovan,* 129 *N. J. L.* 478 *(Sup. Ct.* 1943), *State v. Cooper,* 2 *N. J.* 540 (1949).

There is another consideration which strongly buttresses this conclusion. Schlossberg and Famiglietti made no attempt before the trial to take the depositions of or propound interrogatories to Thourot or LaMort or an officer of the Trust Company, and at the trial were not in fact aware whether or not Thourot's checks would support their serious charge, then made for the first time, that money had passed from Thourot to members of the Authority or to some person in a position to influence them. We find it hard to credit their explanation that they first became aware of the Thourot subcontract when it was disclosed at the trial in the course of testimony of their own subpoenaed witness, one Gavett of Clyde Potts Associates. The record contains evidence which clearly suggests that they must have known of the subcontract at least two months or more before the trial began. At all events, they offer no explanation why they did not before the trial take at least Gavett's deposition or propound

interrogatories to him, although they planned to call Gavett as a witness, and did so, knowing that he was not exactly friendly to their cause. In the circumstances, their effort at the trial to force the production of the checks or photographs thereof with no idea whether or not the checks in fact would support their serious charge was an effort at discovery merely. Readily recognizable for what it was, it should not have been permitted. The time for discovery proceedings is fixed by the rules to be completed within 90 days of issue joined, unless enlarged by order of the court, R. R. 4:28. The scheduling of the pretrial conference is deferred until that period has elapsed, R. R. 4:29–2. The purpose is to assure that all parties may and will make the fullest exploration into the facts of their own and their adversaries' cases to the end that the pretrial conference shall truly serve its basic and essential functions of isolating and specifying the factual and legal issues actually in controversy and of incorporating them in the pretrial order. Discovery thereafter is to be allowed sparingly, cf. R. R. 4:29–1(b)(8), where necessary to prevent manifest injustice. To permit the trial itself to take on the aspects of a discovery proceeding is manifestly destructive of the aims of our new procedural framework. And adherence to the spirit of the philosophy which underlies this fundamental change in procedural approach is especially indicated in proceedings in lieu of prerogative writ which "are required to be decided promptly as befits the transaction of important public business," *Ward v. Keenan*, 3 N. J. 298 (1949). To that end R. R. 4:88–6 provides that such actions "may be advanced for hearing, trial and disposition by the court." To allow impermissible discovery at the trial is frustrative of that objective, and was so to an aggravated degree in the instant case because directed to an issue outside any framed by the pleadings and pretrial order.

While a prerogative writ proceeding is ordinarily concerned with the public business, it must be remembered that it nevertheless remains a civil action between named parties in which definite issues framed by the pleadings and pretrial

order are tried and determined. *State v. Donovan, supra.* The proceeding is in no sense a probe comparable to a grand jury inquiry, *In re Pillo, supra,* or an investigation into the conduct of municipal affairs, such as is now being made in Jersey City, *Tiene v. Jersey City,* 13 *N. J.* 478 (1953), where there are no pleadings or pretrial order to define the issues of relevancy or materiality. 8 *Wigmore, supra, p.* 151. We note from official court records that Thourot is presently under subpoena in the Jersey City investigation to produce and testify concerning the checks here in question, among other matters.

In view of our conclusion that the March 12 order of the Law Division must be set aside, it follows that the modifying orders of March 9 and March 18 of the Chancery Division should also be set aside; and no special comment on them is necessary.

Further in view of the result, although we permitted counsel for the defendants in the prerogative writ action to address the court upon oral argument, no purpose can be served by granting their petition for intervention, and the petition is denied.

The causes are remanded with direction that the interlocutory order of March 12, 1954 entered in the Law Division, and the orders of March 9 and March 18, 1954 entered in the Chancery Division be vacated and set aside.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN— 6.

*For affirmance*—None.