41 N.J. Super. 372 (1956)
125 A.2d 292
SOPHIE MERGEL, AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ALBERT MERGEL, DECEASED, PLAINTIFF-APPELLANT,
v.
COLGATE-PALMOLIVE-PEET CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 2, 1956.
Decided August 31, 1956.
*375 Before Judges GOLDMANN, SULLIVAN and BURTON.
Mr. Robert C. Gruhin argued the cause for plaintiff-appellant (Mr. Morris Edelstein, attorney).
Mr. Robert Shaw argued the cause for the defendant-respondent (Messrs. Shaw, Pindar, McElroy & Connell, attorneys).
The opinion of the court was delivered by BURTON, J.S.C. (temporarily assigned).
In this appeal the plaintiff contends that the court committed error in granting defendant's motion for judgment under R.R. 4:51, at the conclusion of the case, and thereby deprived the plaintiff of her right to have the matters in issue determined by a jury.
Sophie Mergel, as administratrix ad prosequendum of the estate of Albert Mergel, deceased, brought this action against the defendant Colgate-Palmolive-Peet Co. to recover loss sustained by her, as next of kin, as a result of the death of her husband on July 30, 1951. Plaintiff, as surviving widow, had previously been awarded workmen's compensation benefits for the death of her husband which occurred while he was engaged in working for his employer, New Jersey Conveyors Corporation, an independent contractor, on the premises of the present defendant.
The decedent was a millwright. Commencing on July 23, 1951 he was engaged in the installing of a conveyor system which was designed to run from the second floor to the first floor in a part of the premises of the defendant known as the "Fab" building, in Jersey City. On the morning of July 30, 1951 the decedent had been working near the ceiling in the building. Around 10:30 A.M. he descended to the floor level complaining of illness. He was permitted to leave work to go home, but was later found at the Hudson Tube Station, from whence he was taken to a hospital where he died at 1:30 P.M.
*376 The allegations of negligence upon which the plaintiff based her case were, in substance, that the defendant piled certain pallets and cartons in and around where the decedent was performing his work so that he was boxed into a space about ten feet square, thus creating a condition which caused the decedent to stretch and strain unduly and to overreach for a distance of about three feet in order to do the work required of him; that the place where decedent was required to do said work was unduly hot, the temperature therein averaging 80 to 85 degrees Fahrenheit, and that defendant failed to provide adequate ventilation to carry off such heat and thus to make the premises a safe place within which to work. Plaintiff contends that the heat, combined with the boxing-in, precipitated a heart attack that culminated in the death of the decedent.
One of the plaintiff's witnesses was George Malgady, brother-in-law of the decedent, who had worked on the job with the decedent from July 23 until July 30. He testified that on the morning of the 30th they started work at 8 o'clock, and that at such time the defendant had cleared a space approximately 15 feet square; that they erected their scaffolding in such area, but that within an hour the cartons or cases were moved into their working space in such a fashion that they were required to get up on top of the cases and to reach over them to do their work. He stated that substantially the same conditions prevailed on each of the previous days they worked on defendant's premises. This witness recalled that on the day in question the temperature in the place where they worked was "80 to 85, possibly 90 degrees." He was uncertain whether there were any blowers or ventilators in the room; however, there were at least six doors, and three or four were open. The brother-in-law testified that the decedent came down the ladder at about 10:30 A.M., that he complained that he did not feel well, and he was sent home.
Edward M. Leidy, another millwright, testified on behalf of the plaintiff. He stated that he had been working about 15 feet from the decedent on the morning in question, that *377 he saw the decedent reaching over boxes to drill holes in the ceiling and later observed him coming down the ladder, describing him as having been "all in."
Dr. Saul Lieb, plaintiff's medical expert, diagnosed the cause of death as coronary occlusion, which was caused by two factors: (1) decedent was subjected to an unusual form of exertion in doing his work; (2) he had to do the work under conditions of very great heat. He concluded that both circumstances combined to produce a burden upon the heart vessels, which was more than they could bear. On cross-examination he admitted that among people of the age of 53 probably 60-65% have arteriosclerosis; that wherever there is a coronary occlusion there must be a preexisting coronary sclerosis; that the lack of ventilation and the manner in which the boxes had been piled had nothing to do with his diagnosis of coronary occlusion, but that he believed the unusual exertion, to which he had referred, was induced by the position in which the decedent was required to do his work. He acknowledged that he was not informed as to the nature of the millwright's work.
William Frank, an engineer and witness for defendant, testified he was familiar with the contract and work done by the New Jersey Conveyors Company; that there were six doors, six windows, four of which had ventilators, and that an area for installing was cleared 8 feet wide and 40 feet long.
In Township of Parsippany-Troy Hills, Morris County, v. Bowman, 3 N.J. 97, at page 109 (1949), Justice Heher said in his concurring opinion:
"The legal effect of submitting a cause to a jury for its verdict is a determination by the Court that the evidence is legally sufficient to warrant a finding by the jury in favor of either of the parties to the cause. To entitle the plaintiff to recover, he must adduce evidence which, if accepted as true, is legally sufficient to sustain a verdict, and warrant a judgment in his behalf. The question of the legal sufficiency of the evidence, if accredited by the jury, is the exclusive province of the Court. This has been the recognized rule from time immemorial in the common-law courts of this country and in England. The power of the trial judge to nonsuit or direct a verdict does not depend upon the absence of all testimony contra; *378 the inquiry is whether there is any evidence which, if credited, would justify the affirmation, by `men of ordinary reason and fairness,' of the proposition sought to be maintained. The question is whether there is a reasonable basis in the proofs for a verdict in favor of the party against whom the direction is asked? The scintilla rule does not obtain in this State."
The law requires that the damages chargeable to a wrongdoer must be shown to be the natural and proximate effects of his delinquency. The term "natural" imports that they are such as might reasonably have been foreseen, such as occur in an ordinary state of things; the term "proximate" indicates that there must be no other culpable and efficient agency intervening between the defendant's dereliction and the loss. Smith v. Public Service Corp., 78 N.J.L. 478 (E. & A. 1910). There was no showing in this case that to require a millwright to reach out and drill an overhead hole was not normal in the course of his business. In the absence of such showing it could not be said that the defendant might have reasonably foreseen that requiring decedent to reach out to drill a hole would naturally result in his suffering a coronary attack.
The doctor who testified for plaintiff admitted that the lack of ventilation had nothing to do with his making a diagnosis of coronary occlusion; he never worked as a mill-wright, but was of the opinion that as to causal relation one factor was that the decedent was working "under conditions of very great heat." The employer is not required to furnish the finest and safest place of employment but it must be reasonably safe and conform to the established standards in general use by those engaged in the same industry. Canonico v. Celanese Corp. of America, 11 N.J. Super. 445 (App. Div. 1951). The mere fact that the temperature was between 80 to 85 degrees does not impute negligence. At best it can only be inferred from the doctor's testimony that the decedent was doing his job in a room in which the temperature was 80 to 85 degrees and exerted himself in doing so.
The duty which was owed by the defendant to the decedent in connection with the furnishing of a safe place *379 for the decedent to work, was merely to warn him of dangers of which the defendant was aware. This type of duty does not extend to such dangers which are as obvious to others as to the person in control. If the danger is open and visible and apparent to ordinary observation the person in control has a right to assume such observation will be made to discover it. 1 Stevenson, Negligence in Atlantic States, sec. 341, p. 514; Walz v. Public Service Elec. & Gas Co., 7 N.J. Misc. 993 (Sup. Ct. 1929); Lauter v. Hedden Const. Co., 83 N.J.L. 617 (E. & A. 1912).
Before recovery may be had, a duty must exist in law and a failure in that duty must be proved as a fact. It is difficult to conceive that the person who engages an independent contractor is under any duty to guard the servants of the latter against the very danger that arises from their work. Broecker v. Armstrong Cork Co., 128 N.J.L. 3 (E. & A. 1941).
It long has been the law of the State that an employee assumes all those risks which are ordinarily incidental to his employment as well as those dangers which are plain and obvious to a person of ordinary understanding and judgment. Curley v. Hoff, 62 N.J.L. 758 (E. & A. 1899); McDonald v. Standard Oil Co., 69 N.J.L. 445 (E. & A. 1903); Huels v. General Electric Co., 134 N.J.L. 165 (Sup. Ct. 1946); Canonico v. Celanese Corp. of America, 11 N.J. Super. 445 (App. Div. 1951).
Assumption of risk, though usually applied to the relationship of master and servant, may be used in other fields. No matter where applied, the doctrine may involve no fault or negligence, but rather entails the undertaking of a risk of a known danger. Hendrikson v. Koppers Co., 11 N.J. 600 (1953).
The decedent was a millwright for 20 years, and the work being done was in his line; he was familiar with the surroundings and the activity going on, having worked on the premises an entire week. The condition or danger complained of was not latent, but open and apparent to any man of ordinary intelligence. The fact that he determined *380 to work on top of boxes was voluntary on his part, and in doing so the fact that he was compelled to stretch or reach was also obvious. The record discloses that the hazards complained of were plain and obvious, and the plaintiff has not disputed the knowledge or nature of them.
The authorities indicate that contributory negligence and assumption of risk is customarily a question of fact for the jury. However where, as here, the requisite elements of assumption of risk clearly appear conclusively as a fact or by necessary exclusive inference from the proofs, then the case properly should not have been submitted to the jury. Scheirik v. Izsa, 26 N.J. Super. 68 (App. Div. 1953).
In Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939), Justice Heher stated:
"Reason and justice dictate that one cannot deliberately incur an obvious risk, especially where preventive means are at hand, and then hold the author of the danger for the ensuing damage. Whether such conduct be classed as an assumption of risk or contributory negligence, it precludes recovery."
The plaintiff complains that the trial court misconstrued the effect of the pretrial order in its action of limiting the plaintiff to the factual allegations incorporated therein. R.R. 4:29-1(b) provides, in part, that the court shall make an order reciting the action taken at the hearing, which order shall recite specifically: "(2) The factual contention of the plaintiff as to the liability of the defendant." The rule directs that the order shall become part of the record, supersedes the pleadings and controls unless modified at or before trial in accordance with R.R. 4:15-2. The order in this case was not modified either before or during trial, and therefore controlled the issues involved. The plaintiff's present position is a belated one, in now charging the court below with reversible error, when she failed to act in accordance with R.R. 4:15-2 and moved to amend. Jenkins v. Devine Foods, Inc., 3 N.J. 450 (1950); Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360 (1954).
*381 However, because of our conclusions, had the amendment been allowed it would have availed the plaintiff nothing.
Judgment affirmed.
GOLDMANN, J., concurs in the result.