63 N.J. Super. 571 (1960)
165 A.2d 207
DOROTHEA McKINLEY, PLAINTIFF-APPELLANT,
v.
SLENDERELLA SYSTEMS OF CAMDEN, N.J., INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1960.
Decided November 4, 1960.
*575 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. H. Hurlburt Tomlin argued the cause for appellant.
Mr. S.P. McCord, Jr., argued the cause for respondent (Messrs. Starr, Summerill & Davis, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff brought a County Court action to recover damages for personal injuries allegedly sustained through the negligence of defendant, a reducing salon, while taking its course of "Slenderella" treatments. Defendant's motion for dismissal made at the close of the entire case was held in abeyance by the trial judge for later determination, R.R. 4:51-2; he sent the case to the jury, and it returned a unanimous verdict of $25,000. An accordant judgment was entered. Defendant then moved for a new trial on the usual grounds that the verdict was against the weight of the evidence and the result of passion, prejudice, mistake or partiality. After hearing argument the trial judge rendered an opinion in which he held there had been no negligence on defendant's part, it had not engaged in the practice of medicine, and the damages awarded were excessive. The matter, he said, should not have been submitted to the jury in the first instance. He thereupon entered an order granting defendant's motion for judgment and awarded judgment of no cause for action against plaintiff, with costs, because the court was "satisfied that the verdict was excessive, and the result of prejudice, partiality, passion or mistake and, also, that the motions of the defendant for an involuntary dismissal and judgment should have been granted." The final paragraph of the order recited that
"IF, FOR ANY REASON, this judgment is disturbed or reversed, IT IS ORDERED that a new trial be had as to all issues, unless the defendant is willing to pay and the plaintiff is willing to accept the sum of $10,000."
*576 This appeal followed.

I.
Plaintiff, a 51-year-old secretary, learned of defendant's program, designed for weight loss, improvement of posture and figure, and stimulation of circulation, through newspaper advertisements and radio and television commercials. She called at its Haddonfield office on March 28, 1957, was given a lengthy talk, a courtesy treatment on the Slenderella machine, and a booklet entitled "The Slenderella Story." She then signed a contract to pay $100 for a course of 50 treatments. The contract contained a recital that defendant relied upon plaintiff's representations that she was in good health and not pregnant, and that she could undertake and complete the Slenderella program outlined. Relying on this representation, defendant made no physical examination of her.
The treatments, which plaintiff normally took twice a week, required her to lie stretched out on a table about 18 inches wide and 6 feet long, with her shoulder blades resting on two oscillating pads and her arms extended to grasp a bar above her head. The pads would oscillate simultaneously about 7 1/2 minutes and then alternately for a like period. The entire table would then oscillate for another 4 minutes. Thereafter plaintiff's position would be shifted so that her buttocks rested on the pads, and the entire cycle would be repeated.
Plaintiff received 24 treatments from March 28 through July 16, 1957. She testified that after the third or fourth she began to experience "great soreness" in her back. She reported this to the attendant, who supplied her with a sponge rubber pad to place under her hips during that phase of the treatment, at the same time urging that she try to get along without the pad because "there was absolutely no harm to these treatments and in fact they would be of great help" to her. Plaintiff had to ask for this pad at *577 subsequent treatments, but after three or four times discontinued using it although she felt it gave her some relief. On each occasion that she asked for the pad she was told, "Oh, this will do you a lot of good instead of harm and certainly won't bother you without the pad. You should try to do without the pad. It would be much more beneficial."
Plaintiff said she stopped taking the treatments in mid-July because of her vacation and a subsequent family illness. In her direct testimony she stated that within two or three days after discontinuing the treatments the soreness in her back disappeared. (However, the history she gave her personal physician, Dr. Luigi Principato, was that she experienced severe pain in September.) Plaintiff resumed treatments on January 17, 1958. The back soreness recurred after the second or third visit to defendant's salon. When she told the attendant about this, the reply was that "this absolutely could not do me any harm, that it was very good for me, on the contrary." Plaintiff took one more treatment, on January 28, and then cancelled all her February appointments. She was experiencing continuous pain in her back. The condition became so severe that she phoned Dr. Principato on February 22, with the result that he had her admitted to a Camden hospital and placed in traction. Her physician called in an orthopedic surgeon, Dr. Haines, for consultation, and the latter then took over. Plaintiff remained in the hospital until March 8, when she returned home. Dr. Haines prescribed a heavy spinal support garment, and later a modified back brace. Plaintiff returned to work on a full-time basis within about three weeks from her return home.
Mention should also be made of a letter received by plaintiff from defendant's manager, in reply to one she had written on February 21 telling of the difficulty she was having with her back and apparently asking for a refund. The manager wrote, in part: "As I explained on the telephone there is no way in which a Slenderella treatment can injure your body. Refunds of money on a Slenderella course are not *578 made, but there is no time limit on taking the treatments if you care to resume them at a future date."
At the time of the trial plaintiff testified that the only limitations on her activity were that she had to give up using a lawn mower, could pull weeds for only 10 or 15 minutes, and could do ironing for only half an hour. She had some discomfort while typing at the office.
Dr. Principato testified that plaintiff had a preexisting condition known as lumbar lordosis, an accentuation of the back curve, and that the Slenderella treatments had definitely magnified her condition into a "ligamentous disorder of the lumbosacral joint." Dr. Haines, in answer to a comprehensive hypothetical question incorporating his own experience with a Slenderella treatment on a machine similar to that used by plaintiff, was of the opinion that plaintiff's back trouble was a direct result of her treatments and that she had sustained an acute sprain of the ligaments of the spine. Her lordosis was not responsible for her present difficulty but simply made it more difficult to relieve her of her complaint. It was his opinion that plaintiff would probably continue to have difficulty with her back for the rest of her life, would require support, and be restricted in any activity involving extensive bending. Defendant's medical expert, Dr. Jordan, an orthopedic surgeon, found that X-rays revealed that plaintiff had a preexisting degenerative arthritis between the fifth lumbar and first sacral vertebrae. He was of the opinion that plaintiff had sustained an "acute irritation" of the arthritic process as a result of the Slenderella treatments. He thought that "there must have been some lighting up character" to the treatments plaintiff underwent. His prognosis was that she would do well in the future "as long as she continues her activities along the present line. If she would carry out strenuous activity, I think she could expect exacerbation of her back pain."
In her complaint and at pretrial plaintiff asserted both negligence and breach of warranty, express and implied, on defendant's part. She contended that defendant was negligent *579 in that it (1) failed to have an efficient mechanical device or devices; (2) failed properly to examine her before administering the Slenderella treatments; (3) failed to anticipate that use of the mechanical device employed in giving the treatments could cause her injury; (4) negligently continued administration of the treatments after defendant or its representatives knew or should have known of their harmful effect upon her; and (5) failed to warn her of the harmful propensities of the Slenderella treatments when defendant knew or should have known of them. Defendant's answer denied negligence or any express or implied warranty, and raised the defenses of contributory negligence and assumption of risk. Plaintiff's case was tried solely upon the theory of negligence.
On this appeal plaintiff argues that the jury verdict was not against the weight of the evidence or excessive, so that the trial court erred in setting aside the verdict and judgment in her favor and granting defendant's motion for judgment. In essence, she claims there was sufficient evidence to establish a breach of duty owing her by defendant; that defendant was negligent in the several aspects mentioned in the preceding paragraph; and that this negligence proximately brought on her back condition.

II.
Negligence has been defined as conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. 2 Restatement, Torts, § 282, p. 738 (1934); Harpell v. Public Service Coord. Transport, 20 N.J. 309, 316 (1956). In the field of negligence we compare defendant's conduct with that which the hypothetical person of reasonable vigilance, caution and prudence would have exercised in the same or similar factual situation. Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953), affirmed 14 N.J. 526 (1954). The concept of negligence presupposes that the *580 actor either does foresee an unreasonable risk of injury or could foresee it if he conducted himself as a reasonably prudent man. 2 Harper and James, Law of Torts, § 16.5, p. 907 (1956). Judge Learned Hand viewed the degree of care demanded of a person by an occasion as the resultant of three factors: the likelihood that his conduct will injure others, the seriousness of the injury should it occur, and the interest which he must sacrifice to avoid the risk. Conway v. O'Brien, 111 F.2d 611, 612 (2 Cir. 1940); cf. 2 Restatement, Torts, § 291, p. 785 (1934).
However, all negligent conduct does not result in liability. There must be an antecedent duty to use care with respect to the interest invaded. Harper and James, above, § 18.1, p. 1015; Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 315 (1954). As this court said in the Overby case (at page 104), negligence as a legal concept "is not an imaginative notion, a creature of mere surmise or conjecture; it denotes elements of factuality from which a lack of due care can be rationally deduced."
The primary question to be answered here is: Has plaintiff produced sufficient evidence from which reasonable men could find that defendant's conduct was negligent? The burden, of course, is on plaintiff to establish negligence, for negligence is never presumed.

III.
We deal first with plaintiff's claim that defendant failed to have an efficient mechanical device or devices for treating her. There was no proof whatsoever that the vibrating table operated inefficiently or in any manner other than that intended, or of any defect in its design or manufacture. Nor was there proof that the table was inherently dangerous, although this is intimated in plaintiff's brief in a discussion of the use of electricity to operate the equipment. The mere fact that an instrumentality is run by electric power does not make it inherently dangerous. Plaintiff *581 made no attempt to adduce testimony showing that a certain standard of care existed with regard to this type of vibrating machine or that defendant violated a standard generally followed in the community by similarly situated businesses. We therefore conclude that there was nothing to go to the jury on this allegation of negligence.

IV.
It is next claimed that defendant had the duty of carefully investigating plaintiff's condition by a physical examination, and that merely eliciting from her a statement that she was in good health, not pregnant, and could undertake and complete the course of treatments, did not satisfy that duty. Duty signifies conformance to a reasonable standard of legal conduct in light of the apparent risk. The existence of a duty is a question of law; failure in that duty must be proved as a fact. Mergel v. Colgate-Palmolive-Peet Co., 41 N.J. Super. 372, 379 (App. Div. 1956), certification denied 22 N.J. 453 (1956). It was said in Wytupeck v. Camden, 25 N.J. 450, 461-462 (1957), that
"* * * Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, * * *. In the field of negligence, duty signifies conformance `to the legal standard of reasonable conduct in the light of the apparent risk'; the essential question is whether `the plaintiff's interests are entitled to legal protection against the defendant's conduct.' * * * Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct."
Defendant, as noted, made specific inquiry of plaintiff as to her physical condition, and received assurance that she was in good health and able to undergo the Slenderella treatments. In the light of what was said in Wytupeck, a requirement that a defendant, before administering the *582 Slenderella treatments to plaintiff, either conduct a complete physical examination of her or request her to supply evidence of such an examination, would place an unreasonable burden upon this type of enterprise. It is not contended that the Slenderella enterprise is undesirable; the contrary is indicated in view of the connection between proper weight and good health. There is no indication from human experience that reasonable prudence requires defendant to burden its enterprise with the prerequisite of a physical examination of its patrons. By asking them to represent that they are in good health and able to take and complete treatments, Slenderella sufficiently discharged its obligation. Reasonable standards of care and prudence require no more.
The duties of reasonable care and diligence are founded on the probabilities of a given situation, not on mere possibility. Jelinek v. Sotak, 9 N.J. 19, 24 (1952). The testimony of defendant's executive vice-president and former general manager was that Slenderella had been operating on a nation-wide basis since 1950, had given some 30 million treatments to 3-4 million women who had represented themselves to be in good health, and that there had been not more than six claims of harm over the eight-year period. The duty to take advance precautions must necessarily depend on the warning which common experience gives. "Perception of the risk * * * is the correlation of past experience with the specific facts in a situation." Harper and James, above, § 16.5, p. 916. In the light of defendant's experience, as well as the nature of the treatment offered, it is manifest that to require a physical examination of its patrons would be to impose a duty where possibility and not probability is present. Inquiry with respect to a patron's state of health was sufficient, even as it would be in many gymnasiums where men or women go to improve posture or physical condition. There being no duty, there could be no breach. Accordingly, defendant's alleged negligence in this second aspect of plaintiff's argument was not properly for the jury, as a matter of law.

*583 V.
Plaintiff further contends that defendant had a duty to use reasonable care to prevent unreasonable risk of injury to its patrons from the use of the vibrating table, and that defendant failed to anticipate that its use could cause injury. The test of liability is whether under the particular circumstances the injury ought reasonably to have been anticipated.
Plaintiff claims that representations to be found in "The Slenderella Story" booklet amounted to practically a guarantee that treatments would be given only to a person whose physical condition was such that she was able to receive them without danger to her physical well-being. (It must be remembered that this action was tried on the theory of negligence rather than breach of contract.) We do not read the booklet as making the representations claimed for it by plaintiff.
In view of the fact that some 30 million treatments produced only a half-dozen similar claims, it is apparent that defendant was justified in assuming that if a patient represented herself to be in good health and able to take the treatments, she would suffer no harm from the Slenderella course. There is no evidence that defendant's method of accepting applicants was sub-standard in the business. That six or so women out of several millions claimed that the treatments harmed them does not mean defendant was put on such notice of the dangerous propensities of its treatments that it should have exerted greater care in accepting patrons. Reasonable care under the circumstances suffices. Using Judge Hand's formula in Conway v. O'Brien, above, it cannot be said that reasonable men could infer that the likelihood of injury, plus the seriousness of possible injury, outweighs the interest sacrificed to avoid the risk. It must be concluded as a matter of law that under the circumstances defendant used reasonable care and was reasonably positive that plaintiff would be able to undertake the treatments *584 offered without physical danger. Here, again, the matter was not one for the jury.
In this connection, plaintiff asks that defendant be charged with a duty of care required of one providing medical treatments  that is, the duty to exercise the skill and care usual to a member of the medical profession. It is claimed that the Slenderella treatments fell within the ambit of R.S. 45:9-18 defining persons who shall be regarded as practicing medicine and surgery. The point must have been raised in the argument on the motion below, because it is mentioned in the trial judge's opinion.
While the Slenderella treatments admittedly were intended to correct posture, stimulate circulation, and produce body toning, weight loss and relaxation, it is difficult to characterize defendant's procedures as the practice of medicine, in the sense of treatment of a human disease. Defendant did not, of course, hold itself out as practicing medicine, nor did it represent that it had special medical knowledge. In any event, we find a total absence of evidence on plaintiff's behalf as to the standards of the "profession" of which it claims defendant was a member, and as to the particulars in which its performance was deficient.

VI.
We find merit in plaintiff's claim that defendant negligently continued administration of its treatments even after it knew or should have known of their harmful effect on plaintiff. The evidence is uncontradicted that after three or four treatments plaintiff reported soreness in her back to the attendant, and that the attendant assured her there was absolutely no harm in the treatments and they would, in fact, be of great help. As earlier stated, plaintiff was provided with a sponge rubber pad, but at the same time admonished that she should try to do without it. Relying on these representations plaintiff continued the twice-weekly *585 treatments from April until July 1957. It will also be recalled that after she resumed treatments in January and complained to the attendant of soreness, she was again assured that the treatment could do her no harm and was good for her. We conclude that the trial court was in error when it held there was no negligence in this aspect of the case.
Once defendant knew of the painful effect of its treatments upon plaintiff's back, it was under a duty to use reasonable care to avoid any further risk of harm to her. It was careful enough to ask her at the time of the signing of the contract whether she was in good health and able to go through with the treatments. If its treatments could not harm anyone in good health  and defendant's experience undoubtedly bore this out  it must be realized that when plaintiff repeatedly complained of a sore back, and regardless of whether the treatments were the cause of that soreness, she was no longer in good health. Surely, had plaintiff originally represented that she had a sore back, there would be a jury question as to whether defendant was justified in initiating treatments. The situation is not changed because plaintiff's soreness was revealed at a later date. Not only did defendant fail to warn plaintiff not to continue, but actually represented that the Slenderella treatments were harmless and beneficial.
A jury could reasonably have found that defendant should have realized that its treatments were the cause of plaintiff's soreness. In short, it could not be concluded as a matter of law that after having learned of plaintiff's sore back, defendant used reasonable care to prevent unreasonable risk by continuing the treatments and telling plaintiff they could not harm her, but would benefit her.
Of course, if plaintiff could be found to have been contributorily negligent as a matter of law, then the entire issue of negligence was properly taken from the jury. The trial court ruled that plaintiff was guilty of contributory negligence as a matter of law. It thought that reasonable men *586 could not differ on the matter  that her continued use of the vibrating table after knowledge of its effect upon her, placed her in a position where she could foresee that the injury complained of was likely to occur. We do not agree.
In view of defendant's representations that its treatments were not harmful, but actually beneficial, we believe that reasonable men might well differ as to whether plaintiff used reasonable care in continuing with the treatments. This is reinforced by statements in "The Slenderella Story" booklet, among them one which assured patrons that the Slenderella procedures were the result of years of experience and the assembled advice of the best health authorities. We hold that the issue of contributory negligence was for the jury to decide.

VII.
Our review of the record, particularly the medical testimony and prognoses, and plaintiff's testimony as to her present condition, leads to the conclusion that the trial court was correct in finding the verdict excessive and the result of prejudice, partiality, passion or mistake. Plaintiff's hospital stay was relatively short, and she was away from her work approximately five weeks before she was back on a full-time basis. She concedes that she is without pain if she wears the modified support garment prescribed for her, although she does experience some minor restriction in motion. Her bills were less than $700; she did not lose any wages and her earning capacity does not appear to have been impaired. Certain activities already mentioned, such as weeding, gardening and ironing, must be performed with caution and for short periods. While the measurement of damages in personal injury cases is bounded by limitations of reason rather than by any established scale, the exercise of sound discretion would indicate that even the boundaries of reason were overrun by the jury. Cf. Cermak v. Hertz Corp., 53 N.J. Super. 455, 465 (App. Div. 1958).

*587 VIII.
The case should be remanded for a retrial on the question of liability as well as damages since it is impossible to tell from the general verdict which of the grounds of negligence submitted to the jury in the court's charge were relied on. As noted above, several issues which should not have been submitted were in fact left to its determination. Under the circumstances, the only just result is that the entire case be tried over in the light of this court's conclusions.
We observe that the last paragraph of the judgment under review, directing that if for any reason the judgment is reversed a new trial be held as to all issues, "unless the defendant is willing to pay and the plaintiff is willing to accept the sum of $10,000," is without validity. The trial court may not impose a condition subsequent; the judgment either stands or falls.
Moreover, the attempted remittitur is not proper, as we have had occasion to remark in a number of recent appeals which reveal that an incorrect form of remittitur has been adopted by some trial judges. See, e.g., Marty v. Erie R.R. Co., 62 N.J. Super. 458, 467 (App. Div. 1960); Webber v. McCormick, 63 N.J. Super. 409 (App. Div. 1960). In the case of an excessive verdict the trial court either sets it aside and awards a new trial, or puts the successful party upon terms to release the excess or go to retrial. Only the plaintiff need approve the remittitur. If he accepts, defendant's only remedy is to appeal.
The judgment is reversed, and the case remanded for a new trial on all issues in accordance with this opinion.